## Bender, Appellant, *v.* Bender.

*Wills—Trusts and trustees—Perpetuities.*

Testatrix gave her estate to trustees for the benefit of two nephews and a niece. She further directed as follows:

"If any of said nephews and niece should die, then the child or children of such nephew or niece to receive the parent's share equally, to be paid to them or to their lawfully appointed guardian until such time as all three of said niece and nephews shall be deceased, after which the said rents, issues and profits shall be paid annually to all the children of said nephews and niece per capita, share and share alike, for life, and upon the decease of any of said grand-nephews and grand-nieces his or her share to go to his or her heirs, thus paying the net income of said property to said grand-nephews and grand-nieces, or their heirs, until the last one of the following named grand-nephews and grand-nieces shall be deceased. The said grand-nephews and grand-nieces are as follows, to wit: . . . . When the last one of said above named grand-nephews and grand-nieces shall be deceased, then I direct said trustees or the survivor of them, or their successors in the trust, to sell all of said real estate at either public or private sale and make good and sufficient title deed therefor to the purchasers and convert all personalty into cash, and I hereby give and bequeath the same, and direct the distribution thereof, to and among the heirs of all the children of said nephews and niece, as aforesaid, per stirpes." *Held,* that the will did not violate the rule against perpetuities.

Argued May 19, 1909. Appeals, No. 157 and 158, Jan. T., 1909, by plaintiff, from decree of C. P. Lancaster Co., Equity Docket, No. 5, p. 9, sustaining demurrer to bill in equity in case of Benjamin H. Bender v. Jacob H. Bender and Hugh R. Fulton, Executors of the Last Will of Anna E. Habecker, deceased. Before MITCHELL, C. J., FELL, BROWN, ELKIN and STEWART, JJ. Affirmed.

Bill in equity to declare a testamentary trust invalid as in violation of rule against perpetuities. Before LANDIS, P. J.

From the record it appeared that Anna E. Habecker died, in Manor township, Lancaster county, Pennsylvania, on October 16, 1906, having first made her last will and testament, dated December 5, 1905. By her said will, she gave, devised and bequeathed all her estate and property, real, personal and mixed, unto her sister, Mary Habecker, for and during her natural life; and, after the death of the said sister, gave, devised and bequeathed unto her nephew, Jacob H. Bender, and Hugh R. Fulton, Esq., as trustees, in trust, the undivided half of three tracts of real estate, viz.:

"To rent, farm or crop said farms and the mill property to the best advantage, and from the rents, issues and profits thereof (1) to pay all taxes, repairs and insurance, and keep the properties in good condition. (2) To divide the balance, after deducting necessary expenses and compensation, into three equal parts or shares. The one-third or share thereof I direct to be paid to my said nephew, Jacob H. Bender, for and during his life. The one-third or share thereof I direct to be paid to my nephew, Henry H. Bender, for and during his lifetime. The other or third third or share thereof, I direct shall be paid to my niece, Eve Ann Bender, for and during her lifetime.

"If any of said nephews and niece should die, then the child or children of such nephew or niece to receive the parent's share, equally, to be paid to them or to their lawfully appointed guardian; until such time as all three of said niece and nephews shall be deceased, after which the said net rents, issues and profits shall be paid annually to all the children of

the said nephews and niece, per capita, share and share alike, for life. And upon the decease of any of said grandnephews and grandnieces, his or her share to go to his or her heirs. Thus paying the net income of said property to said grandnephews and grandnieces or their heirs, until the last one of the following named grandnephews and grandnieces shall be deceased. The said grandnephews and grandnieces are as follows, to wit: (a) 1, Fanny M. Bender; 2, Barbara M. Bender; 3, Annie M. Charles; 4, Elizabeth M. Bender; 5, Abraham M. Bender; 6, Charles M. Bender; and 7, Jacob M. Bender, children of Jacob H. Bender; (b) 1, Charles Bender; 2, Franklin Bender; and 3, Katie Bender, children of Henry H. Bender; and (c) 1, Annie Bender, child of Eve Ann Bender.

"Seventh. When the last one of the above named grandnephews and grandnieces shall be deceased, then I direct said trustees, or the survivor of them, or their successors in the trust, to sell all of said real estate at either public or private sale, and make good and sufficient title deed therefor to the purchasers, and convert all personalty into cash, and I hereby give and bequeath the same, and direct the distribution thereof to and among the heirs of all the children of the said Jacob H. Bender, Henry H. Bender, and Eve Ann Bender, nephews and niece as aforesaid, per stirpes."

Mary Habecker died on October 5, 1906, eleven days prior to the death of the testatrix, and at that time she owned the other undivided one-half of the three tracts above mentioned. Anna E. Habecker left to survive her as her heirs at law and next of kin a nephew, Benjamin H. Bender, the plaintiff; a nephew, Henry H. Bender; a niece, Eve Ann Bender; and a nephew, Jacob H. Bender; all of whom are of full age. In the last will and testament of the executrix, Jacob H. Bender and Hugh R. Fulton, Esq., were named as executors, and on October 22, 1906, letters testamentary were duly granted to them. Jacob H. Bender and Hugh R. Fulton, Esq., accepted the trusts relating to the three tracts of land above described, and, claiming, by virtue of their appointment, to act as trustees, they have entered upon and taken possession of the aforesaid undivided half of the said three tracts of real estate, and

still hold possession of the same. They deny plaintiff the right of possession to the one-fourth of the undivided half of said real estate, and, up to the time of the filing of the bill, he has been unable to obtain possession of any portion of it.

LANDIS, P. J., stated the following conclusions of law:

The rule against perpetuities is an artificial rule, made by the judges of England and transmitted to her colonies at an early date. It owes its birth and the shape that it has assumed to executory devises of chattels real. It was held, in the celebrated Duke of Norfolk's case, 3 Chan. Cases, 1, by Lord Chancellor NOTTINGHAM, that the limitation over was good, provided the contingency upon which the limitation over was to take effect happened within a life in being, and that any limitation is good which must take effect within the lives in being. In Scatterwood v. Edge, 1 Salk. 229, the court of common pleas is said to have agreed in holding that "the compass of a life or lives" was a reasonable time, "for let the lives be never so many, there must be a survivor, and so it is but the length of that life." And Lord HARDWICKE, in Hopkins v. Hopkins, 1 Atk. 580, said: "It is not (in my opinion) material to restrain it to the life of tenant for life of the land, provided it be restrained to the life of a person in being."

In Thellusson v. Woodford, 4 Ves. 227, a testator gave a large fortune to accumulate until all his sons and grandsons' children, who were living at his death, were dead, and then to be paid over. He left three sons and six grandsons, him surviving. Lord LOUGHBOROUGH, assisted by Lord ALVANLY, and BULLER, and LAWRENCE, JJ., held the gift over good, and the house of lords, on the unanimous opinion of the judges, affirmed the decree. The eccentricity of the will and the large amount involved excited great interest in the case. The arguments were of the most elaborate character, and the judges did not conceal their dislike of the will; but no one of the many eminent lawyers who took part in the decision seems to have felt any doubt in the case.

This decision led to the passing of the statute 39 and 40, George III, chap. 98, commonly called the Thellusson act,

which thereafter prevented the accumulation of income for a longer period than twenty-one years after the death of the grantor, settler, devisor, or testator, or during the minority or respective minorities of any person or persons who shall be living, or in ventre sa mere, at the time of the death of such grantor, devisor or testator. This rule, together with the common law, was transmitted to Pennsylvania, and may here be regarded more properly as a rule against remoteness. It has been somewhat modified in accordance with the Thellusson act by the Act of April 18, 1853, sec. 9, P. L. 503, and to some extent by a number of subsequent acts. In Hillyard v. Miller, 10 Pa. 326, GIBSON, C. J., said: "A perfect definition of a perpetuity has not been given, and the nearest approach to it is found in Lewis on Perpetuities, chap. 12, where it is said to be a future limitation, whether executory or by way of remainder, and of real or personal property; which is not to vest till after the expiration of, or which will not necessarily vest within, the period prescribed by law, for the creation of future estates, and which is not destructible by the person, for the time being, entitled to the property subject to the future limitation, except with the concurrence of the person interested in the contingent event."

As was said by Professor Gray, in his work on the Rule Against Perpetuities, sec. 629: "The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore, every provision in a will of settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied." See, also, Gerber's Est., 196 Pa. 366. "Trusts for accumulation of income are as rigidly restricted by the rule against perpetuities as legal estates," and a trust for a noncharitable purpose which is to continue beyond the limits prescribed by the rule is wholly void, and will not be held valid to the extent of the rule and invalid as to the excess: Hillyard v. Miller, 10 Pa. 326.

But, it is equally true that, where a trust is created for the

benefit of certain persons in being at the death of the testator, it may continue until the death of the survivor. Thus in Goehring's App., 81* Pa. 283, a trust was made by deed to Dennison, his heirs and assigns, of real estate for the use of his three children, to lease the premises, etc., "to have and to hold . . . . during the existence of this world," paying to the grantor $5.00 rent during her life, and after her death to the heirs, etc., of her husband, deceased, their heirs and assigns, and subject to this rent, in trust that Dennison, his heirs and assigns, should lease the premises for such term as he or they might deem expedient, and apply the rents equally between the three children; if either of them should die without issue, the whole of the rents to go to the survivors; if either should leave issue, such issue to take the parent's share; after the death of all the children, the premises to be held in trust for their right heirs, etc., their heirs and assigns; if any die without issue, to hold for the survivors, their heirs and assigns, etc., with the proviso that there should be no estate vested in the three children which might be charged with their debts, but the rents should be applied to them free from any incumbrances created by the three children or the lawful issue of either of them at any time during their life or the life of a survivor. It was held that trust did not contravene the rule against perpetuities. And in Stephens v. Dayton, 220 Pa. 522, Mr. Justice MESTREZAT, in delivering the opinion of the court, said, "The controlling language is: 'This trust shall continue during the life of the survivor of any grandchildren, who may be living at the time of my death, or until such time, although one or more of said grandchildren be living, as the said trustees shall unanimously agree that it will be wise and safe to terminate said trust. . . .' In no contingency, therefore, can the trust be extended beyond the life of a surviving grandchild who was living at his grandfather's death. Hence it must be terminated within a life in being at the death of the creator of the trust."

An interest is not obnoxious to the rule against perpetuities, if it begin within a life in being and twenty-one years thereafter, though it may extend beyond. The remoteness against

which the rule is directed is remoteness in the commencement, or first taking effect of limitations, and not in the cesser or determination of them. An estate that is to arise within the prescribed period may be so limited as to be determined on the happening of any event, however remote. See Johnston's Est., 185 Pa. 179; Cascaden's Est., 153 Pa. 170; Goddard's Est., 198 Pa. 454.

Under these authorities, let us, therefore, briefly consider the will of the testatrix. The real estate in question was given to trustees: First, to pay all taxes, repairs and insurance, and keep the properties in good condition; second, to divide the balance, after deducting necessary expenses and compensation, into three equal parts or shares. The one-third or share thereof was to be paid to her said nephew, Jacob H. Bender, for and during his life; the one-third or share thereof to her nephew, Henry H. Bender, for and during his lifetime; and the other or third third or share to be paid to her niece Eve Ann Bender, for and during her lifetime. It will hardly be disputed that, up to this point, the trust was a good and valid one. She then provided that, "if any of said nephews and niece should die, then the child or children of such nephew or niece to receive the parent's share, equally, to be paid to them or to their lawfully appointed guardian, until such time as all three of said niece and nephews shall be deceased, after which, the said net rents, issues and profits shall be paid annually to all the children of the said nephews and niece, per capita, share and share alike, for life. And upon the decease of any of said grandnephews and grandnieces, his or her share to go to his or her heirs." So far as this provision of the trust provided for the payment of the income to the child or children of the deceased nephew or niece until such time as all three of them should be dead, the trust was also valid; but, if, without more, the issues and profits were then to be paid to all the children of said nephews and niece, per capita, share and share alike for life, it would appear that such issues and profits might be payable to some that were not in existence at the death of the testatrix, or had not been born within twenty-one years after that date. Therefore, if this were all that appeared in the

case, in my judgment the trust would be void. But the testatrix added: "Thus paying the net income of said property to said grandnephews and grandnieces, or their heirs, until the last one of the following named grandnephews and grandnieces shall be deceased. The said grandnephews and grandnieces are as follows, to wit: (a) 1, Fannie M. Bender; 2, Barbara N. Bender; 3 Annie M. Charles; 4, Elizabeth M. Bender; 5, Abraham M. Bender; 6, Charles M. Bender; and 7, Jacob M. Bender, children of Jacob H. Bender; (b) 1, Charles Bender; 2, Franklin Bender; and 3, Katie Bender, children of Henry H. Bender; and (c) 1, Annie Bender, child of Eve Ann Bender." In the next clause of her will, she also provides that "when the last one of the above named grandnephews and grandnieces shall be deceased, then I direct said trustees or the survivor of them, or their successors in the trust, to sell all of said real estate at either public or private sale, and make good and sufficient title deed therefor to the purchasers, and convert all personalty into cash, and I hereby give and bequeath the same, and direct the distribution thereof, to and among the heirs of all the children of the said Jacob H. Bender, Henry H. Bender, and Eve Ann Bender, nephews and niece as aforesaid, per stirpes." It will then be observed that the grandnephews and grandnieces who were to take under the testatrix's will were all in being at the time of her death. While using the words that "the said net rents, issues and profits shall be paid annually to all the children of the said nephews and niece per capita," she afterwards designated who these grandnephews and grandnieces were, and provided that, upon the death of the last one of those named, this real estate should be sold and the proceeds distributed.

It, therefore, seems to me that the trust is a good one under the law, and, for that reason, it is concluded that the demurrer must be sustained and the bill dismissed at the costs of the plaintiff.

Demurrer sustained, and bill dismissed, at costs of plaintiff.

*Error assigned* was in sustaining demurrer and dismissing the bill.

*C. E. Montgomery* and *W. U. Hensel,* with them *J. W. Den-linger,* for appellant.

*Hugh R. Fulton* and *W. H. Keller,* of *Coyle & Keller,* for appellees.

Per Curiam, June 22, 1909:

The decree is affirmed on the findings of law by the court below.