**FALLS CITY, Appellant,**

v.

**MISSOURI PACIFIC RAILROAD COM-
PANY, Appellee.**

No. 71–1419.

United States Court of Appeals,
Eighth Circuit.

Dec. 20, 1971.

As Amended on Denial of Rehear-
ing and Rehearing En Banc
Jan. 26, 1972.

Edmund D. McEachen, Omaha, Neb.,
for appellant.

J. A. C. Kennedy, Jr., Omaha, Neb.,
for appellee.

Before MATTHES and LAY, Circuit
Judges, and HUNTER, District Judge.

ELMO B. HUNTER, District Judge.

This is an appeal from an order of the
district court granting summary judg-
ment in favor of the appellee, Missouri
Pacific Railroad Company (Railroad),
and against the appellant, the City of
Falls City, Nebraska (City), thereby
quieting title to a certain 33-acre tract
of land, which is located outside the
City, in the appellee. Jurisdiction is
based upon diversity of citizenship un-
der 28 U.S.C. §§ 1332 and 1441.

On February 10, 1971, the City con-
veyed, by deed, the land in question to
the appellee's predecessor, the Missouri
Pacific Railway Company. That deed
provided, in part, the following:

"... title to the ...
land shall remain in the said Railway
Co. its successors and assigns as pro-
vided in ... Exhibit 'A', as
long as the same shall be used for the
purposes enumerated therein, and that
in case it should be abandoned for
such uses according to the terms of
said Exhibit 'A', then and in that

event the title to said land . . shall revert to the City of Falls City, the donor of said land under the terms aforesaid."

The document referred to in the deed, termed Exhibit "A," was an agreement which had been made earlier between certain citizens of the City and officials of the Railroad. That agreement provided that the Railroad was to construct certain buildings on the land and make certain other improvements to the land.[1] In addition to a recital of the consideration for the agreement and the terms of an escrow arrangement, the agreement further provided that:

"The intention of this agreement is that the citizens of Falls City agree to furnish to said railway company the ground for a site for said [divisional terminal railway] yards and buildings in consideration of the location of its division headquarters at said point.

"It is understood and agreed that the title to said land shall rest in said railway company as long as said ground shall be used for such purposes and in case it is not so used that the title thereto shall revert and rest in the grantors thereof."

It is undisputed between the parties that, following the conveyance, the Railroad constructed the buildings mentioned in the agreement, made the other required improvements, and located its divisional headquarters in Falls City, Nebraska. The divisional headquarters remained in Falls City until at least 1962.

In the district court and on this appeal, the City contends that in 1963 the Railroad moved its divisional headquarters from Falls City, thereby violating the conditions of the deed and causing title to the land to revert to the City. The Railroad conversely urges that the conditions of the conveyance were not breached when its divisional headquarters were relocated in Atchison, Kansas. The district court, in granting summary judgment, found that, in light of recent Nebraska case law, it was immaterial whether the conditions of the deed had been breached by the Railroad because the reverter clause itself was void and unenforceable.

■■ Under Nebraska law, the conveyance in dispute can be properly characterized as a fee simple determinable with the possibility of reverter in that it creates a fee simple estate and provides that the estate shall automatically expire upon the occurrence of a stated event.[2] Hiddleston v. Nebraska Jewish Education Society, 186 Neb. 786, 186 N.W.2d 904, 905 (1971); McArdle v. School District of Omaha, 179 Neb. 122, 136 N.W. 2d 422, 425 (1965); Dell v. City of Lincoln, 170 Neb. 176, 102 N.W.2d 62, 71 (1960); Ohm v. Clear Creek Drainage District, 153 Neb. 428, 45 N.W.2d 117, 119–120 (1950). See also: Restatement, Property § 44 (1936). And, in Nebraska, a reverter clause in a conveyance establishing a defeasible fee simple is enforceable if it is not otherwise invalid as an unreasonable restraint on alienation.[3] Cast v. National Bank of Commerce, Trust and Savings Association of Lin-

---

1. That portion of "Exhibit 'A'" reads as follows:

"That whereas, the said railway company is about to construct a division terminal railway yard including about seven miles of new yard track, and eighteen stall round house, water and coal plants, cinder pits, car repair tracks, and such other appurtenances belonging to a division yard and round house, and such improvements are to be located upon the tract . . . "

"The said improvements to be made by the said party of the first part is esti-

mated to cost approximately $200,000.00 . . . "

2. For a discussion of the attributes of a fee simple determinable, see: C. Moynihan, Real Property, pp. 35–36, 95–100 (1962).

3. The validity and duration of a reverter clause may also be limited by statute. See, for example: Neb.Rev.Stat. § 76-2, 102 (Reissue 1966).

coln, 186 Neb. 385, 183 N.W.2d 485, 489 (1971), modifying 185 Neb. 358, 176 N.W.2d 29 (Neb.1970): Hiddleston v. Nebraska Jewish Education Society, *supra.* Thus, although the parties raise numerous contentions involving related collateral matters, the primary question on this appeal, which was resolved adversely to appellant by the district court, is whether, as a matter of Nebraska law, the condition subsequent contained in this particular conveyance is valid and enforceable or invalid and unenforceable as a restraint on alienation.[4]

█ We find that the recent decision of the Nebraska Supreme Court in Cast v. National Bank of Commerce, Trust and Savings Association of Lincoln, 183 N.W.2d 485 (Neb.1971), is controlling. In *Cast*, the court held, upon rehearing, that a condition attached to a defeasible fee simple is an indirect restraint against alienation "if it materially affects marketability adversely."[5] The court went further to state that a restraint on alienation was void regardless of whether it was direct or indirect:

"A majority of this court, including the writer, has come to the conclusion that the law is the same on direct and indirect restraints on alienation. The authorities are not in accord on the question. While much has been written on the subject, we adopt the following as a proper statement of the law: 'As used in this treatise, the ex-

pression "restraint on alienation" refers not merely to the restriction of the legal power of alienation, but also to the restriction of alienability as a practical matter. Any provision in a deed, will, contract, or other legal instrument which, if valid, would tend to impair the marketability of property, is a restraint on alienation. In brief, the law is concerned primarily with practical alienation, not with a theoretical power of alienation.'"(citations omitted). 183 N.W.2d at page 490.

Further, in reading the earlier *Cast* decision, including the dissenting opinion, against the majority opinion in the final *Cast* decision, there appears a distinction between those conditions which limit how the property is to be used as opposed to a limitation upon the persons to whom the property may be alienated.[6] If the condition subsequent in the conveyance expressly limits alienation of the property to an impermissibly small number of persons, it is void and unenforceable. Conversely, most use restrictions are valid and enforceable unless they also have the practical effect of "affecting marketability adversely" by unreasonably limiting the class of persons to whom it may be alienated.[7] In that event, under the rationale of *Cast*, such use restrictions are "indirect restraints on alienation" which also are unenforceable.

4. Since a resolution of this primary issue is determinative of this appeal, we need not resolve these collateral issues raised by the parties.

5. "The undesirable effect on society potentially resulting from [restraints which make property unmarketable] include: (1) the unnatural increase in the market value of property which might result if restraints were widely employed in a particular locale; (2) the discouragement of improvements to the property, since it may be unprofitable to the owner to make such improvements while threatened with such restraint; (3) the hampering of the most effective use of property if a prospective purchaser would be a more effective user than the present owner; and (4) the removal from trade of an increas-

ing amount of the national capital." H. Bernhard, Restraints on Alienation, 57 Mich.L.Rev. 1173, 1179–80 (1959).

6. In his dissenting opinion in the earlier *Cast* decision, Chief Judge White stated a position which was later to become the majority position: "The evil in restraints on alienation as clearly demonstrated by case law is not restrictions on *how* the property is to be used but rather restrictions on *who* can use the property." 176 N.W.2d at page 38.

7. *Compare* Restatement, Property § 406 (b) (1944) *with* Restatement, Property § 437(4) (1944). See also: 6 Powell, Law of Real Property ¶ 843, pp. 14–15 (1971 ed.); Simes & Smith, Future Interests § 1142, p. 33 (1956).

■ Applying the principles enunciated in *Cast* to the conditional limitation presently in issue, it is clear that the reverter clause is unenforceable as an indirect restraint upon alienation. In limiting the use of the property by the Railroad to use as *its* divisional headquarters only, the City, in practical effect, completely restricted alienation of the land to other grantees. Thus, even though the conditional restriction is couched in terms of the use of the property, like the conditional limitation in *Cast*, it unreasonable affects the marketability of the land adversely by completely restricting alienation. It is therefore void and unenforceable and, under Nebraska law, the Railroad holds an indefeasible estate in fee simple. Cast v. Commerce, Trust and Savings Association, *supra* at page 490.

Accordingly, the judgment of the District Court granting a summary judgment in favor of the Railroad and against the City is affirmed.