563 A.2d 139

**CENTRAL DELAWARE COUNTY AUTHORITY, Appellant,**

**v.**

**GREYHOUND CORPORATION, the Boeing Company, Philadelphia Electric Company, Adwin Realty Company, Baldwin Tower Corporation, Century Warehouse, Inc., Sidney M. Baer and Belle K. Baer, H/W, Cathryn Scott, Kathryn Malizia, Exxon Corporation, Bell of Pennsylvania.**

Superior Court of Pennsylvania.

Argued May 18, 1989.

Filed Aug. 8, 1989.

424

Edward C. Toole, Philadelphia, for appellant.

Kurt Denke, Philadelphia, for Greyhound Corp., appellee.

Richard C. Biedrzycki, Philadelphia, for Exxon Corp., appellee.

Harriet F. Withstandley, Philadelphia, for Bell of Pennsylvania, appellee.

Before CIRILLO, President Judge, and ROWLEY and HESTER, JJ.

CIRILLO, President Judge:

This is an appeal from a judgment entered by the Court of Common Pleas of Delaware County quieting title in the defendants, the successors and assigns of the Baldwin Locomotive Works. Greyhound Corporation is the only defendant to have filed a brief in this court. The appellant, Central Delaware County Authority [the Authority], purchased eleven acres of land from Baldwin in 1941, and another three acres in 1950. The deeds from those transactions include the following language:

It is specifically covenanted, stipulated and agreed between the parties hereto that the said tract of land while in the ownership and possession of the said Central Delaware County Authority and its successors, shall be kept available for and shall be used only for public purposes, by the said Central Delaware County Authority and its successors or any other public instrumentality or other agency which may hereafter acquire title to the same. In the event that at any time hereafter said use shall be abandoned so that the said tract shall cease to be used for said public purposes, then and in such event The Baldwin Locomotive Works, its successors and assigns, shall have the right to repurchase, retake, and reacquire the same upon the payment, either to the Central Delaware County Authority if owner thereof, or to any successor in right thereto, or to the municipalities for which the said vendee or its successors shall be acting, the sum of fifty-five hundred dollars ($5,500) above mentioned and herein provided to be paid therefore; or in the event of dispute, the said sum may be paid into Court in any appropriate proceeding for the benefit of any and all parties entitled to the same. In any such case, vendee shall have the right to remove all improvements.

PROVIDED, HOWEVER, that if the Baldwin Locomotive Works does not pay the sum of fifty-five hundred dollars ($5,500) to the said Authority, or otherwise as

above provided, within six months after the date when the Authority or its successors in title abandon the said property for public purposes, or the date when notified by the Authority of its intention to abandon the property, then and in such event this covenant shall become void and of no effect.[1]

The Authority is still in possession of the land, and maintains the sewage treatment plant it had erected there. The plant had remained in operation for some twenty-six years; at this time, however, sewage which had been treated at that site is piped elsewhere for treatment. The Authority now wishes to either sell the property, or find an alternate use for it. It filed suit in 1983 requesting a judgment from the court as to the validity of the above provisions in the deeds. The Authority argued that those provisions violated the rule against perpetuities and that they were void as unreasonable restraints on the alienation of the property in question. The rule against perpetuities claim was submitted to the Honorable Frank T. Hazel for disposition, while testimony was taken by the Honorable Clement J. McGovern on the Authority's restraint on alienation claim. Judge Hazel found that the provisions in question did not violate the rule against perpetuities. Judge McGovern found that the restrictions did not constitute a restraint on alienation.

■ The Authority filed post-trial motions concerning both issues; these motions were denied by Judge McGovern. It then praeciped for the entry of judgment, and appealed from the entry of that judgment.[2] Three issues are raised on appeal to this court:

1. This language is from the 1941 deed. The 1950 deed is substantially similar, with the exclusion of the phrase, "by the said Central Delaware County Authority and its successors or any other public instrumentality which may hereinafter acquire title to the same," found in the first paragraph above. Further, repurchase of the three acres conveyed in the 1950 deed is conditioned upon payment of $2970.00.

2. Greyhound claims that this appeal was untimely, arguing that the Authority should have appealed from the December 21st "order," filed by Judge McGovern, rather than filing post-trial motions. Although

(1) Whether the Court below erred in concluding that the Rule Against Perpetuities did not render the restrictive covenants contained in Plaintiff's 1941 and 1950 deeds null and void?

(2) Whether the Court below erred in concluding that the covenants are not unreasonable restraints on alienation?

(3) Whether the Court below erred in failing to consider the testimony of Plaintiff's expert witness and related exhibits on marketability and valuation?

■ The Authority argues that the rule against perpetuities should render the provisions in the deeds about which it complains void.[3] It contends that the trial court erred in

that finding was captioned as an order, it was couched in terms of a judgment:

> AND NOW, this 21st day of December, 1987, it is hereby ORDERED, and DECREED, and ADJUDGED that Judgment is entered on behalf of Defendants and against Plaintiff. Restrictive covenants in the 1941 and 1950 deeds are not unreasonable restraints on alienation, and are valid and binding.
>
> The Plaintiff shall be forever barred from asserting any right, lien, title or interest in land inconsistent with this judgment.

An examination of the docket discloses no notation that this document was considered a final judgment. In fact, it is not noted on the docket at all. Notice of the document is included in the record; it designates the document filed as an order, rather than as a judgment. Final judgment is recorded on the docket as having been entered on May 23, 1988.

We are of the opinion that the "order" in question was mischaracterized as a "judgment" by the trial court, and that it was proper for the Authority to file post-trial motions, rather than taking an immediate appeal. In *Shonberger v. Oswell*, 365 Pa.Super. 481, 530 A.2d 112 (1987), the trial court entered no verdict against the appellants, instead, that court labelled its findings "judgment." The trial court then heard post-trial motions, and denied them, entering a final judgment. This court held that because the erroneously labelled judgment was entered before the filing and denial of post-trial motions, its entry was premature and void, and so did not begin the appeal period. *Id.*, 365 Pa.Superior Ct. at 483 n. 1, 530 A.2d at 113 n. 1. The situation is sufficiently similar to the instant case to be controlling.

3. The rule against perpetuities states that an interest must vest, if it vests at all, within twenty-one years of a life in being. *In re Lewis' Estate*, 349 Pa. 571, 573, 37 A.2d 482, 484 (1944). The purpose behind the rule is to avoid the postponement of the vesting of an estate or interest beyond a set period in order to protect free alienability of land. *Barton v. Thaw*, 246 Pa. 348, 352–354, 92 A. 312, 313–314

finding that the estate conveyed to it was a fee simple subject to a condition subsequent, and that the grantor's assigns thereby retained a right of reentry also known as a power of termination, an interest which is excepted from the rule against perpetuities. The Authority argues that the interest controlled by Greyhound is a repurchase option, and is therefore subject to and void under the rule against perpetuities.

▮▮▮▮ A fee simple subject to a condition subsequent arises where a provision in an instrument provides that upon the happening of a certain event, the grantor has the right and power to terminate the conveyed estate. *Emrick v. Bethlehem Township,* 506 Pa. 372, 378, 485 A.2d 736, 739 (1984); *Stolarik v. Stolarik,* 241 Pa.Super. 498, 506, 363 A.2d 793, 797 (1976). It differs from a fee simple determinable estate which automatically ends upon the happening of a stated condition; the fee simple subject to a condition subsequent requires an action of the grantor to retake the estate upon the happening of the stated condition. *Higbee Corporation v. Kennedy,* 286 Pa.Super. 101, 106–107, 428 A.2d 592, 595 (1981); *Stolarik,* 241 Pa.Super. at 506, 363 A.2d at 797. Of these two estates, the language in the deeds in question more clearly creates a fee simple estate subject to a condition subsequent.[4] The grantor, its successors, or assigns must do an act to terminate the estate; the estate does not merely revert to the grantor when the estate is no longer used for public purposes. However, that act involves the payment of a purchase price, and so requires further consideration on our part in light of the

(1914). "[I]f an unlimited time were allowed for the creation of these future and indestructible estates the alienation of lands might be henceforward forever prevented by the innumerable future estates which the caprice or vanity of some owners would prompt them to create." *Id.,* 246 Pa. at 355, 92 A. at 314.

4. The conditional language which indicates that one estate or the other has been created, *see Stolarik,* 241 Pa.Super. at 506, 363 A.2d at 797, (e.g., "if," "upon the condition that," "provided that," a stated condition occurs, then the estate created, "shall be null and void," or "shall result back"), is present here.

Authority's argument that the interest was merely a repurchase option.

■ The trial court found that repayment of the purchase price was merely part of the action required to terminate the estate, and that, therefore, the provision did not create a repurchase option. This court is not bound by the trial court's conclusions of law. We may draw our own conclusions from the facts as established. *Minteer v. Wolfe,* 300 Pa.Super. 234, 238, 446 A.2d 316, 318 (1982). With this in mind, we must consider the deeds in question to determine whether or not the trial court erred in finding that the provisions in question created a power of termination. The pertinent language in the deed provisions states:

> In the event that at any time hereafter said use shall be abandoned so that the said tract shall cease to be used for said public purposes, then and in such event The Baldwin Locomotive Works, its successors and assigns, *shall have the right to repurchase, retake, and reacquire the same upon the payment* ... [of] the sum of fifty-five hundred dollars ($5,500) above mentioned and herein provided to be paid therefore....

(emphasis added). The trial court held that "the mere inclusion of terms pursuant to which reentry is accomplished will not negate the intent of the parties and this Court concluded that such intention was to reserve in the Grantor a vested right of reverter upon the occurrence of the condition subsequent."

We note, however, Comment c to section 394 of the Restatement of Property (1944):

> If the language and conveyance of an estate in fee simple are otherwise reasonably susceptible of two constructions, under one of which it creates either a possibility of reverter or power of termination, and under the other of which it creates an option to repurchase, the latter of the two constructions is preferred. The fact that the exercise of the reserved privilege requires the parting with of money or other consideration by the reserving conveyor is sufficiently indicative of the intent of the conveyor to

create an option.... The finding of the option, under these facts, furthers the protective policy which underlies the rule against perpetuities, and is in accord with the general constructional preference for covenants rather than conditions.

4 Restatement of Property § 394, comment c (1944). *See also Sapper v. Mathers*, 286 Pa. 364, 367, 133 A. 565, 566 (1926) (policy of law is to keep land free from impediments, law endeavors to strip devises and grants of restrictive covenants); 28 Am.Jur.2d § 140 (1966) (conditions tending to destroy estates such as conditions subsequent are not favored in law; no provision will be held to create such a condition if language will bear any other reasonable interpretation).

■ While the language in the deeds certainly can be read as creating a fee simple subject to a condition subsequent—the condition being the cessation of public use which would permit the assignees or successors of the grantor to exercise its power of termination in some fashion—the language also states that the grantor, its successors, or assigns shall have the right to repurchase and reacquire the property upon the occurrence of that condition. Under the restatement provision quoted above, this language creates a repurchase option. This has been the result reached by other jurisdictions considering similar deed provisions. *See Bond v. Kennedy*, 213 Ark. 758, 212 S.W.2d 336 (1948) (clause stating that when ceased to be used for school purposes the grantor or anyone else owning land could have land at specific price of $60 was not reverting clause, but was option clause permitting grantor to repurchase land upon the happening of a contingency); *Alamo School District v. Jones*, 182 Cal.App.2d 180, 6 Cal.Rptr. 272 (1960) (provision stating that if land was ever abandoned for school purposes grantor had right to repurchase for consideration mentioned found to be contingent option to repurchase, not right of entry for condition broken); *Gearhart v. West Lumber Co.*, 212 Ga. 25, 90 S.E.2d 10 (1955) (provision stating that property will be used for school purposes only, and if

provision is violated, grantor has right to repurchase did not create conditional estate dependant on a condition subsequent); *Bates v. Bates,* 314 Ky. 789, 236 S.W.2d 943 (1950) (provision stating that the grantor would have the land at the same price when it ceased to be used as school house property not possibility of reverter but option personal to grantor); *Emerson v. King,* 118 N.H. 684, 394 A.2d 51 (1978) (clause which provided that if grantees chose to sell or convey interest in property, or upon death of the survivor of the two, grantor would have option to repurchase created a fee simple defeasible subject to repurchase provisions); *Gange v. Hayes,* 193 Or. 51, 237 P.2d 196 (1951) (provision stating that if lumber company ceased operations for period of twenty-four consecutive months, grantor, successors, or assigns could demand a warranty deed for the property upon payment of original purchase price less annual rental for time company possessed land, was option to repurchase rather than reversionary interest).

Having determined that the provision in question creates an option to repurchase, we must then determine whether the law of this Commonwealth requires the rule against perpetuities to be applied to this repurchase option. The Restatement of Property is clear that an option to repurchase reserved in favor of the conveyor and unlimited as to time is subject to the rule against perpetuities. 4 Restatement of Property § 394. Greyhound, however, argues that in Pennsylvania, options to repurchase property are contractual obligations, and therefore not subject to the rule.

We note that under section 401 of the Restatement of Property, a transaction which is exclusively contractual is not subject to the rule. Comment b defines "exclusively contractual" as a transaction which "concerns no specific land...." 4 Restatement of Property § 401, comment b. Although section 401 seems to contemplate that options such as the one presented to us here are within the rule against perpetuities—the repurchase option here involves a right to repurchase specific land—there are other pertinent considerations in this case which affect our determination of

the issue. The supreme court of this Commonwealth, in a similar case, has held that Pennsylvania law does not recognize a blanket condemnation of all remote options. *Southeastern Pennsylvania Transit Authority v. Philadelphia Transportation Co.*, 426 Pa. 377, 385, 233 A.2d 15, 19 (1967), *cert. denied*, 390 U.S. 1011, 88 S.Ct. 1259, 20 L.Ed.2d 161 (1968).

In *Southeastern Pennsylvania Transit Authority v. Philadelphia Transportation Co., supra,* the supreme court discussed a deed provision conveying property from the City of Philadelphia to the Philadelphia Transportation Company (PTC). In 1907, PTC leased the property from the City, and the City reserved the right to repurchase the property " 'upon July 1st, 1957, or upon the first day of any July thereafter by serving six month's notice ...,' " *SEPTA,* 426 Pa. at 383, 233 A.2d at 15, and upon the payment of a specified amount. After several decades of what the supreme court termed the "financial misfortune" of PTC, the agreement was amended in certain parts, but the repurchase option remained unchanged. Southeastern Pennsylvania Transportation Authority (SEPTA), as the City's assignee, moved to purchase the property from PTC pursuant to the agreement, and a declaratory action was brought based on the contention that the option agreement violated the rule against perpetuities.

The supreme court, in considering the case, indicated that it found the right reserved by the City to be purely contractual, because it gave the City no right to PTC's property, until the option was exercised. *Id.*, 426 Pa. at 385, 233 A.2d at 19. This finding was not important to the supreme court's disposition of the case, however. Instead, the court rested its decision upon its determination that the right to the free and unfettered use of property was outweighed by considerations of public policy:

The historical purpose of the rule against perpetuities was to destroy serious hindrances to the beneficial and prosperous use of property.... In this case, the danger

of fettering the free use of property is outweighed by considerations of public concern and welfare.

*Id.*

The SEPTA court found these public policy considerations to be the difference between the case before it, and the case of *Barton v. Thaw,* 246 Pa. 348, 92 A. 312 (1914). *See SEPTA,* 426 Pa. at 385, 233 A.2d at 19 (citing *Barton,* 246 Pa. at 364, 92 A. at 316). In *Barton,* the supreme court held that a repurchase option was void under the rule, affirming the opinion of the trial court with approval. The trial court there stated:

> We cannot conceive of a more violent breach of the rule against perpetuities. Such an impress on land ought not to be sustained, and it cannot be. It isolates the property. It takes it out of commerce. It removes it from the market. It halts improvements. It prevents the land from answering to the needs of growing communities. No homes can be built or towns laid out on land so encumbered, because the land always remains subject to be taken under the option. It is not a matter which affects the rights of individuals only. The welfare of the public is at stake. It is contrary to the well settled public policy of the state that such an option or right to purchase land should be held to be good. It was for the express purpose of destroying such serious hindrances to material and social prosperity and progress that the rule against perpetuities was brought forth.

*Barton,* 246 Pa. at 364, 92 A. at 316. In *Barton,* then, public interest required a strict application of the rule; failure to find the repurchase option void in that case would have created restraints on the alienation of the property with no benefit to the public.

■ We agree with the supreme court in *SEPTA v. PTC, supra,* and the trial court in the instant case, that were we to find the rule against perpetuities applicable to this particular option contract, we would be creating a climate in which grantors would not freely give their properties for public use. The public benefits from our determination not

to apply the rule here because the Authority will either find another public use for the property, or sell it to some entity who can. The trial court pointed out, and we agree, that "[t]he public is [best] served by governmental capacity of obtaining, without expense, real estate upon which a public use can be conducted." If no public use continues on the property in question, then, as the grantor wished, the property may be purchased by its assigns and successors. As the trial court states, "Such is an impetus to private and corporate largesse [to allow] public use." We find, therefore, that the policies and considerations behind the rule against perpetuities are not served by its application in this case.[5]

■ The Authority next argues that the provisions in the deed requiring that the property be used for public use only are invalid as unreasonable restraints on alienation. The Authority argues that should it wish to sell the property, the group of potential buyers for a property limited to public use is smaller than that group of potential buyers for a property which can be put to any use whatsoever. Therefore, the Authority argues that the provisions directly as well as indirectly affect the alienation of the property.

A restriction upon the use of property does not fit into the definition of restraints on alienation set out by section 404 of the Restatement of Property. Section 404 indicates that because a use restriction is not violated by the making of a later conveyance, it is not within the definition of a restraint on alienation. *See* 4 Restatement of Property, Introductory Note to Part II, at 2375. The Restatement does point out, however, that a use restriction may limit the likelihood that a property interest will be alienated. *Id.* Section 437, entitled "General Rule Determining Validity of

5. Greyhound also raises an estoppel argument here, claiming that the Authority is estopped from asserting the rule here because it accepted the provisions in the deed in order to obtain the conveyance of the land at a low cost. Because we find that public policy considerations militate against applying the rule against perpetuities to options for repurchase of land granted for public use, we see no need to address this argument.

Other Restraints," states that restraints on the use of property are "normally valid." *Id.* at § 437, comment b. "Unless contrary to the general welfare, or violative of some rule of law, a given restraint is valid...." *Id.* at comment a. In fact, the provisions in question here are intended to benefit the public welfare. Under the Restatement, then, these restrictions on the use of the property should not be considered restraints on alienation.

The Authority, however, would have us adopt the reasoning of the Eighth Circuit Court of Appeals in *Falls City v. Missouri Pacific Railroad Co.,* 453 F.2d 771 (8th Cir.1971). That court held that although most use restrictions are valid, if they affect marketability by unreasonably limiting the class of persons to whom the property may be conveyed, they are void and unenforceable. *Id.* at 773–74. Further, the court stated that because the grantor had limited the use of the land to use as a divisional headquarters, it had, in practical effect, created a restraint on alienation: "Thus, even though the conditional restraint is couched in terms of marketability of property ..., it unreasonably affects the market-ability of the land adversely by completely restricting alienation. It is therefore void and unenforceable...." *Id.* at 774. The Authority further argues that Pennsylvania law follows this rationale. In *Grossman v. Hill,* 384 Pa. 590, 122 A.2d 69 (1956), our supreme court found that the ostensible "use" restriction in that case impermissibly restrained alienation because the restriction provided that a ten foot portion of one lot could only be used in connection with another lot. *Id.,* 384 Pa. at 596, 122 A.2d at 72. The court pointed out that finding that the provision was a restriction on use rather than on alienation would "enable any grantor to restrain the alienation of property in defiance of the rule by the mere device of limiting its "use" to the grantee and his heirs forever, or, as here, attaching its "use" in perpetuity to another designated property." *Id.* Grossman, however, was overruled on procedural grounds. *See In re Mather's Estate,* 410 Pa. 361, 371 n. 6, 189 A.2d 586, 591 n. 6 (1963); *Reading Co. v.*

*Willow Development Co.*, 407 Pa. 469, 471, 181 A.2d 288, 289 (1962).

In any case, we find that the situation before us differs from that in either *Grossman* or *Falls City*. In both of these cases, alienation was completely blocked by the deed restrictions on use. While the restriction in *Grossman* was called a restriction on use, in fact, it was an attempt to prevent alienation of the land. Here, the property is not completely unalienable. Rather, the group of entities to whom it may be conveyed is small. The question which must be answered is whether or not that group is unreasonably small. We think that it is not. It was the intent of the grantor to provide land for public use.

Further, the restriction in the present case clearly affects use only. The land may be alienated even if the Authority cannot find a buyer who will put it to public use. In that event, the repurchase option will come into effect and Greyhound, or any of the other of the successors or assignees of the grantor, may buy the property under the terms of the deed within six months. If they decline to do so, the restriction is nullified and the property may be sold by the Authority regardless of the use to which it will be put. If the Authority is not satisfied with the purchase price contained in the deed, it has only itself to blame. It did not have to accept the terms. If, on the other hand, Greyhound or another entity does exercise that option, the restriction has been abrogated. The successors and assigns of Baldwin Locomotive Works may then resell to anyone they choose for any purpose, if they in fact choose to do so. We do not see that this restriction works any restraint on alienation.

The last issue raised by the Authority concerns the admissibility of evidence of marketability and valuation. The trial court ruled the evidence was irrelevant. An appellate court will reverse the ruling of the trial court only for an abuse of discretion or error of law. *Concorde Investments Inc., v. Gallagher*, 345 Pa.Super. 49, 57–58, 497 A.2d 637, 641 (1985). Moreover, as the trial court noted, whether or

not the evidence is considered the result will remain the same. We agree, and therefore find this argument meritless.

Affirmed.