588 A.2d 485

CENTRAL DELAWARE COUNTY AUTHORITY, Appellant,

v.

GREYHOUND CORPORATION; The Boeing Company; Philadelphia Electric Company; Adwin Realty Company; Baldwin Tower Corporation; Century Warehouse, Inc.; Sidney M. Baer and Belle K. Baer, h/w; Cathryn Scott; Kathryn Malizia; Exxon Corporation; Bell of Pennsylvania, Appellees.

Supreme Court of Pennsylvania.

Argued Dec. 6, 1990.

Decided March 21, 1991.

48

Stephen W. Miller, Gretchen W. Anderson, Philadelphia, for appellant.

Kurt Denke, Philadelphia, for Greyhound.

Edmund Jones, Media, for Cathryn Scott.

Joseph E. Lastowka, Jr., Media, for Kathryn Malizia.

Richard C. Biedrzycki, Philadelphia, for Exxon Corp.

Harriet F. Withstandley, Bala Cynwyd, for Bell Tele. Co. of PA.

Mark R. Kehoe, Philadelphia, for PECO & Adwin Realty Co.

Lawrence A. Serlin, Philadelphia, for The Boeing Co.

Mark J. Levin, Philadelphia, for Baldwin Towers.

Edward Leonard, Philadelphia, for Baers & Century Warehouse, Inc.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

In 1941 and 1950 the Baldwin Locomotive Works conveyed to the Central Delaware County Authority ("Authority") two parcels of land. The Authority paid $5,500 for the parcel conveyed in 1941 and $2,970 for the parcel conveyed in 1950. The deeds in both cases conveyed a fee simple interest subject to a restrictive covenant appearing in the encumbrance clause. The 1941 deed contains the following provision:

It is specifically covenanted, stipulated, and agreed between the parties hereto that the said tract of land, while in the ownership and possession of the said Central Delaware County Authority and its successors, shall be kept available for and shall be used only for public purposes by the said Central Delaware County Authority and its successor or any other public instrumentality or other agency which may hereafter acquire title to the same. In the event that at any time hereafter said use shall be abandoned so that the said tract shall cease to be used for said public purposes, then and in such event the Baldwin Locomotive Works, its successors and assigns, shall have the right to repurchase, retake and reacquire the same upon the payment, either to the Central Delaware County Authority if owner thereof, or to any successor in right thereto, or to the municipalities for which the said vendee or its successors shall be acting, the sum of fifty-five hundred dollars ($5,500.00) above mentioned and herein provided to be paid therefor; or in the event of dispute, the said sum may be paid into Court in any appropriate proceeding for the benefit of any and all parties entitled to the same. In any such case, vendee shall have the right to remove all improvements.

PROVIDED, HOWEVER, that if the Baldwin Locomotive Works does not pay the sum of fifty-five hundred dollars ($5,500.00) to the said Authority, or otherwise as above provided, within six months after the date when the authority or its successors in title abandons the said

property for public purposes, or the date when notified by the Authority of its intention to abandon the property, then and in such event this covenant shall become void and of no effect.

The encumbrance clause of the 1950 deed is substantially the same as that of the 1941 deed, except that the phrase "by the said Central Delaware County Authority and its successors or any other public instrumentality which may hereafter acquire title to the same" does not appear, and repurchase is conditioned upon payment of $2,970 instead of $5,500.

The Authority operated a sewage treatment plant on this land for approximately twenty-six years. In 1980, the Authority ceased operation of the sewage treatment facility, but the Authority continues to maintain and possess the land. In 1983, it brought an action to quiet title in the land, alleging that the deed's public use, ownership and repurchase restrictions are void as violative of the rule against perpetuities.[1]

The parties stipulated to evidence on each claim regarding the chain of title of the Baldwin tract and corporate successorship to Baldwin, and, accordingly, to the persons who may assert the right to repurchase. The trial court found that the restrictions of the deed do not violate the rule and that they are not an unreasonable restraint upon alienation. It concluded that the estates conveyed in the deeds are fee simple interests subject to a condition subsequent.[2] Since a fee simple subject to a condition subsequent creates a present interest in the grantor, the

[1]. The rule against perpetuities provides that an interest must vest, if it vests at all, within twenty-one years of a life in being, and is currently codified at Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S. § 6104.

[2]. A fee simple subject to a condition subsequent arises where the provision is that upon the happening of a certain event, the grantor has the right and power to terminate the conveyed estate. See *Emrick v. Bethlehem Twp.*, 506 Pa. 372, 379, 485 A.2d 736, 739 (1984).

conveyance did not, according to the trial court, violate the rule against perpetuities.[3]

Superior Court, on appeal, held that the restriction in the deed was an option to purchase, not an interest subject to a condition subsequent. 386 Pa.Super. 423, 563 A.2d 139. Since options to purchase are subject to the rule against perpetuities,[4] and since this restriction allowed for the possibility that the option might vest later than twenty-one years after a life in being at the creation of the restriction, Superior Court held that the restrictions violated the rule. Superior Court determined that the restrictions were not invalid, however, on public policy grounds: "were we to find the rule against perpetuities applicable to this particular option contract, we would be creating a climate in which grantors would not freely give their properties for public use." At 386 Pa.Superior Ct. 434, 563 A.2d 139. The Authority petitioned for allowance of appeal and we granted allocatur. The principal issue on this appeal is whether Superior Court erred in determining that the rule against perpetuities did not invalidate the restrictive covenants.

The first question is whether Superior Court was correct in holding that the estate created was a repurchase option rather than an estate subject to a condition subsequent. A fee simple subject to a condition subsequent arises where the provision is that upon the happening of a certain event, the grantor has the right and power to terminate the conveyed estate. See *Emrick v. Bethlehem Twp.*, 506 Pa. 372, 379, 485 A.2d 736, 739 (1984). This

---

3. A presently vested interest cannot violate the rule against perpetuities because the rule applies only to future interests. As this court stated in *Barton v. Thaw:*

> It is fundamental that the rule deals only with future estates. No present interest, whether alienable or not, is objectionable under the rule against perpetuities, although restraints upon the alienation of present interests may be prohibited by other rules of law. 30 Cyc. 1466.

246 Pa. 348, 352, 92 A. 312, 313 (1914).

4. An option to purchase is a future interest which may or may not be exercised, i.e., it may or may not vest, within twenty-one years. It is, therefore, subject to the rule against perpetuities.

estate is not subject to the rule against perpetuities because the right of reentry or power of termination which it creates is exempt from the rule.[5] However, a repurchase option, as the restriction in the present case was held to be by Superior Court, is subject to the rule, for an option is not a vested estate.[6]

The initial inquiry, then, is whether Superior Court was correct in deciding that the interest in this case was a

---

**5.** *See* Restatement of Property § 372:

Subject to the exception stated in § 394 (reserved option to repurchase), any interest which is

(a) neither a remainder nor an executory interest, and

(b) left in, or limited in favor of, the conveyor, or the successors of the conveyor

is not required to comply with the rule against perpetuities. The rationale for this rule is provided in Comment a:

Such interests existed long prior to the development of the rule against perpetuities; they had caused no inconveniences which aroused the ire of either the public or the judiciary. Hence when the rule against perpetuities received its judicial moulding, it was so moulded as not to impinge on these traditionally accepted types of interests.

**6.** *Accord, Barton v. Thaw,* in which this court determined that a right to repurchase was a future interest subject to the rule against perpetuities and not a presently vested interest:

The covenant in form is an option, but without limit as to time of acceptance. "An option is a unilateral agreement, binding upon the optionor from the date of its execution, but does not become a contract inter partes in the sense of an absolute contract to convey on the one side and to purchase on the other until exercised by the optionee." *Barnes v. Rea,* 219 Pa. 279 [68 A. 836 (1908)]. "An option is not a sale. It is a right of election in the party taking the same to exercise a privilege, and only when that privilege has been exercised by acceptance in the manner specified in the agreement does it become an absolute contract, binding upon both parties. It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time. By such an agreement he does not sell his land, nor does he at that time enter into an absolute contract to sell and convey, but he does agree to sell something, that is the right or privilege to buy at the election or option of the party with whom the agreement is made. . . . Except for the absence of a limit as to time of acceptance, the option to purchase this land constituted a substantial interest in the land which could be conveyed. . . . But it did not constitute such a vested interest in the land as can escape the rule against perpetuities. To vest means to give an immediate fixed right of present or future enjoyment." 246 Pa. at 356–57, 92 A. at 314–15.

repurchase option rather than a fee simple subject to a condition subsequent. We concur with Superior Court's analysis. While it is true that the deeds may be read to create a fee simple subject to a condition subsequent (the condition subsequent would be abandonment of public use followed by the payment of certain sums of money), the deeds can also be read to create a repurchase option conditioned upon the termination of public use. Like Superior Court, to resolve this ambiguity, we turn to the Restatement of Property for guidance:

> If the language and circumstances of a conveyance of an estate in fee simple are otherwise reasonably susceptible of two constructions, under one of which it creates either a possibility of reverter or power of termination, ... and under the other of which it creates an option to repurchase, ... the latter of the two constructions is preferred. The fact that the exercise of the reserved privilege requires the parting with money or other consideration, by the reserving conveyor is sufficiently indicative of the intent of the conveyor to create an option.... The finding of the option, under these facts, furthers the protective policy which underlies the rule against perpetuities, and is in accord with the general constructional preference for covenants rather than conditions.

4 Restatement of Property § 394, Comment c (1944). We believe that section 394 accurately reflects the law of this Commonwealth in favoring interpretations of deed restrictions which bring the restriction within the ambit of the rule. *See Barton v. Thaw*, 246 Pa. 348, 364, 92 A. 312, 316 (1914). Superior Court was not in error, therefore, in finding that the interest created was a repurchase option.

It remains to be considered, however, whether Superior Court was correct in also determining that the rule against perpetuities does not apply to the repurchase option on the grounds of public policy, viz., that grantors would not freely give their properties for public use. At 386 Pa.Superior Ct. 434, 563 A.2d 139. In reaching this conclusion, Superior

Court relied on this court's decision in *SEPTA v. Philadelphia Transportation Co.*, 426 Pa. 377, 233 A.2d 15 (1967).

■ *SEPTA* involved the question of whether the following language in a contract between the City of Philadelphia and the Philadelphia Transportation Company was valid:

The City reserves the right to purchase all the property, leaseholds and franchises of the Company, subject to all indebtedness ... upon July 1st, 1957, *or upon the first day of any July thereafter* by serving six months' notice ... [for] an amount equal to par for its capital stock then outstanding, to wit: the thirty million (30,000,000) dollars of capital stock now authorized plus any additional capital stock issued with the consent of the City hereunder....

426 Pa. at 383, 233 A.2d 15 (emphasis added).[7] This court determined that the repurchase provisions of the contract did not violate the rule against perpetuities (1) because it was not an impress on land, but solely a contract right not within the rule; (2) because the interest, even if a violation of the common law rule, fell within the Estates Act of 1947, providing for a wait-and-see period;[8] and (3) because public policy favors the city's right of repurchase.

As this court observed in *SEPTA*, the Restatement of Property, § 401 provides, "A transaction which is exclusive-

---

**7.** The Philadelphia Rapid Transit Company (PRT) was formed in 1902 to consolidate the various transit systems formerly in existence in Philadelphia. PRT or its subsidiaries leased, owned and operated high speed service and bus and taxi services in Philadelphia. The agreement at issue was entered into on July 1, 1907, and the lawsuit arose when SEPTA attempted to exercise the repurchase option and PRT claimed, inter alia, that the option was void under the rule against perpetuities.

**8.** The common law rule against perpetuities, which provided that a future interest was void *ab initio* if there was the possibility that it would not vest within twenty-one years of a life in being was replaced in Pennsylvania by a wait-and-see statute, The Estates Act of 1947. The law in effect at the time *SEPTA* was written provided:

No interest shall be void as a perpetuity except ... [u]pon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events....

Act of April 24, 1947, P.L. 100, 20 P.S. § 301.4, 4(a) and (b). The current act, Act of June 30, 1972, P.L. 508, No. 164, § 2, 20 Pa.C.S. § 6104(b), is substantially similar.

ly contractual is not subject to the rule against perpetuities." 426 Pa. at 385, 233 A.2d at 20. Further, Comment b to § 401 states: "A transaction is 'exclusively contractual,' within the meaning of that term as used in this Restatement, when, and only when, it concerns no specific land or thing other than land." The contract provision at issue in *SEPTA* did not fetter *specific* property, and thus was contractual within the meaning of § 401.[9] Since the provision was exclusively contractual, it did not fall within the rule against perpetuities. *SEPTA*, therefore, has no application to the present case, for here, the encumbrance clearly is an impress upon specific land and within the rule. Moreover, in *SEPTA* the majority determined that the agreement of 1957 acted as a conveyance to bring it within the Estates Act of 1947 and the wait-and-see rule incorporated therein.[10] In the present case, however, the interest did not vest within twenty-one years, and, therefore, *is* subject to the rule. In short, *SEPTA* is significantly differ-

**9.** The trial court opinion in *SEPTA*, which this court commended as worthy of close study and as the basis of its appellate opinion, 426 Pa. at 382, 233 A.2d at 18, states:

[N]one of PTC's assets, real or personal, is charged with the option. Both PTC's President and its Comptroller testified that PTC has often sold particular pieces of land, as well as personalty such as buses and other equipment, without regard to the City's option to purchase. Moreover, the Supreme Court has established that until exercised the City's option applied to no specific land or thing. [citing *Philadelphia v. Phila. T. Co.*, 386 Pa. 231, 126 A.2d 132 (1956).]

*SEPTA v. Philadelphia Transportation Co.*, No. 971, Slip Op at 63, (Common Pleas, July 14, 1966).

**10.** The original agreement of 1907 was amended on June 12, 1939, October 26, 1950, July 1, 1957, July 5, 1962 and February 25, 1965. The *SEPTA* court stated:

Section 1 of the Estates Act defines a conveyance as "... an act by which it is intended to create an interest in real or personal property whether the act is intended to have inter vivos or testamentary operation." If the 1957 agreement is a conveyance under that definition, the Estates Act of 1947 applies, and the "wait and see" rule was complied with, for the option was in fact exercised within the time limitation of the rule against perpetuities dating from July 1, 1957.

426 Pa. at 386, 233 A.2d at 20.

ent from the present case on the facts and its holding is, therefore, inapplicable.

It remains only to consider whether for reasons independent of *SEPTA*, public policy requires that the rule not be given effect in this case. In *Barton v. Thaw*, 246 Pa. 348, 92 A. 312 (1914), this court addressed the policy underlying the rule and the nature of the legal obligation which the rule imposes. In that case, this court voided a covenant in the deed which granted the option to purchase the surface in fee "at any future time whatsoever ... at a price not exceeding one hundred dollars per acre." *Id.* 246 Pa. at 350, 92 A. at 313.[11] The court held that the rule against perpetuities applied to this repurchase option which was unlimited in time, and the interest was, therefore, void. The rationale for this holding was that the rule against perpetuities is a "peremptory command of law," and thus is not subject to negation by a countervailing statement of public policy:

> "The rule against perpetuities is not a rule of construc-tion, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied." Gray on Rule Against Perpetuities (2nd Ed.), sec 629; *Gerber's Est.,* 196 Pa. 366 [46 A. 497 (1900)]; *Bender v. Bender,* 225 Pa. 434 [74 A. 246 (1909)]. "We must be careful not to strain the law so as to avoid this rule. It is founded upon a sound principle of public policy

11. The language in the *Barton* deed read as follows:
And in case the said parties of the second part, their heirs and assigns, should at any future time whatsoever desire to purchase any of said land in fee simple, then the said parties of the first part, for themselves, their heirs or assigns, hereby covenant and agree to sell and convey the same to the said parties of the second part, their heirs or assigns, at a price not exceeding one hundred dollars per acre.

and should be rigidly enforced." *Coggins' App.*, 124 Pa. 10 [16 A. 579 (1889)].

246 Pa. at 354, 92 A. at 314. The court described the policy underlying the rule as follows:

Such an impress on land [one that violates the rule] ought not to be sustained, and it cannot be. It isolates the property. It takes it out of commerce. It removed [sic] it from the market. It halts improvements. It prevents the land from answering to the needs of growing communities. No homes can be built or towns laid out on land so encumbered, because the land always remains subject to be taken under the option. It is not a matter which affects the rights of individuals only. The entire community is interested. The welfare of the public is at stake. It is contrary to the well settled public policy of the state that such an option or right to purchase land should be held to be good. It was for the express purpose of destroying such serious hindrances to material and social prosperity and progress that the rule against perpetuities was brought forth. And the rule must be rigidly enforced.

246 Pa. at 364, 92 A. at 316.

These considerations are as valid today as they were in 1914, when *Barton v. Thaw* was written. Now, as then, economic development and prosperity depends in important part upon the free alienability of land. It is for this reason that the rule against perpetuities is a "peremptory command of law" that "is to be remorselessly applied." The repurchase option is, therefore, void.

■ Order of Superior Court is reversed. Title is quieted in the Central Delaware County Authority and the option to repurchase, which constitutes a cloud upon the title, is hereby declared void and is removed by cancellation.[12]

12. Appellee Greyhound in its counterstatement of the questions involved in the case also raises the following: (1) that the purpose of the conveyances was to provide land at low cost for public use; (2) that the Authority is estopped from asserting the invalidity of the repurchase option; (3) that the appeal is untimely.

McDERMOTT, J., did not participate in the consideration or decision of this case.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice dissenting.

I dissent and, in support thereof, adopt the Superior Court opinion authored by Judge Vincent A. Cirillo.

None of these claims has merit. The purpose of the conveyances is irrelevant; the fact that the Authority accepted the restrictions in the deed does not estop it from raising the invalidity of the restrictions; and the appeal is timely, having been taken within three days of the entry of final judgment on May 23, 1988.