## Mumma v. Hinkle

622

*John B. Pearson*, of *Bailey & Rupp*, for plaintiff.
*Moses K. Rosenberg*, for defendant.

NEELY, J., February 17, 1958.—This is a proceeding in equity to compel the specific performance of an option contract. The matter is before us on defendant's preliminary objections in the nature of a demurrer to plaintiff's complaint. In support of his demurrer, defendant contends that plaintiff is not entitled to relief because the option agreement upon which plaintiff bases her right to compel the conveyance of the land in question is void and of no effect because it violates the rule against perpetuities.

Plaintiff avers that she had an option to acquire from defendant, inter alia, a certain tract of land consisting of 1.27 acres in Lower Paxton Township in this county. There is attached to the complaint an agreement between plaintiff and defendant identified as exhibit A. The agreement is undated. It bears an acknowledgment dated August 24, 1950, and has been recorded in the Office for the Recording of Deeds in Misc. Book "Y", vol. 7, p. 264.

It is recited in this agreement that Earl J. Hinkle and Evelyn S. Hinkle are trustees for Edgar J. Hinkle under a declaration of trust, that the tract in question was conveyed to the said Earl J. Hinkle and Evelyn S. Hinkle by deed dated August 10, 1948, from Sarah Smith Rhein and Grace U. Smith, and that the parties to this proceeding have been engaged on this tract in a certain restaurant and cabin business. It is averred in the complaint that the operation of this restaurant business was a joint venture by these parties in which

each had a 50 percent interest, notwithstanding the registration of the business under the Fictitious Names Act by defendant under the name "This Is It."

The agreement of August 24, 1950, provided, inter alia, that: "As to the tract of real estate comprising 1.27 acres, situate in Lower Paxton Township, Dauphin County, Pennsylvania, it is definitely understood and agreed that Ethel Mumma has a Six Thousand Dollar ($6,000.00) equity interest in said real estate."

The provisions in this agreement as to the option read as follows:

"Edgar J. Hinkle, for himself, his heirs, executors, administrators, and assigns, covenants and agrees with the said Ethel Mumma that she, the said Ethel Mumma, her heirs, executors, administrators and assigns, shall at all times in the future have an option to purchase all of the realty and personalty used in the operation of all of the business on the aforesaid tract of 1.27 acres, for and at the price of Thirty Thousand Dollars ($30,000.00), and that the present equitable interest of Six Thousand Dollars ($6,000.00) of the said Ethel Mumma may be applied to the aforesaid option price . . ."

It is averred in the complaint that during the continuance of their joint venture, alleged to be a partnership, plaintiff notified defendant of her intention to exercise the option, and further notified defendant that "Miss Mumma will be prepared to make settlement at any time after February 17, 1956." The complaint alleges that defendant refused and still refuses to honor the option and refuses to convey the aforesaid tract of 1.27 acres, which conveyance plaintiff seeks to compel by this action. The agreement recites that defendant is cestui que trust under the above mentioned declaration of trust.

There is necessarily posed in this case the question as to the power of defendant to enter into the option to

convey, in view of the pleading that he is cestui que trust. This is a matter, however, that depends upon proof and is not now before us on defendant's demurrer. The demurrer raises only the question as to whether the covenant by defendant in behalf of himself, his heirs, executors, administrators and assigns in favor of plaintiff, her heirs, executors, administrators and assigns to the effect that the said plaintiff "shall at all times in the future have an option to purchase" the real estate in question, to wit, the tract of 1.27 acres, violates the rule against perpetuities so as to preclude plaintiff from insisting upon the conveyance to her of that tract of land upon payment of the sum of $30,000 in the manner specified in the agreement of August 24, 1950.

". . . As commonly understood, although not technically exact, a perpetuity is something which may last forever, and the rule against perpetuities is a rule that prevents certain existing conditions from continuing for an indefinite period. . . . The rule is aimed at the suspension of alienation of property, compelling such a limitation of future interests as will require them to vest, if at all, within a certain time. The rule promotes alienability by destroying future interests. Alienability is its object, the destruction of future interests is the means of obtaining that object.
. . .

". . . 'The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied' ": Barton v. Thaw, 246 Pa. 348, 351, 354 (1914).

The rule against perpetuities at common law allowed the postponement of the vesting of an estate or interest for the period of lives in being and 21 years and the period of gestation after lives in being.

While the option to purchase real estate is not a sale, the optionee nevertheless does acquire the right to call for a conveyance of the land, and it has been held that this right to purchase constitutes a substantial interest in the land. "An option to purchase is analogous to a contract for the sale of land": Detwiler v. Capone, 357 Pa. 495, 499 (1947); Peoples Street Ry. Co. v. Spencer, 156 Pa. 85 (1893); Kain Account, 6 D. & C. 2d 475, 484 (1955).

In Barton v. Thaw, supra, an option contract gave to the optionees the right to the conveyance of certain real estate "should (they) at any future time whatsoever desire to purchase any of said land in fee simple." It is to be noted that the language of the option in Barton v. Thaw is strikingly similar to the terms of the option contract between these parties dated August 24, 1950. And in that case the Supreme Court held that the option "being without limit of time within which its terms shall be accepted . . . is null and void" because in violation of the rule against perpetuities.

It has been noted that the rule against perpetuities is "a peremptory command of law." Over the years, some features of the rule have been changed in Pennsylvania by statute, and there was further change in the Estates Act of April 24, 1947, P. L. 100, 20 PS §301.1, et seq. Section 4 of this act, 20 PS §301.4, provides, inter alia, as follows:

"(a) General. No interest shall be void as a perpetuity except as herein provided.

"(b) Void interest-exceptions. Upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than

possible events any interest not then vested . . . shall be void."

The rule at common law prohibits the creation of future interests which by possibility may not become vested within a life or lives in being and 21 years thereafter, exclusive of periods of gestation after lives in being. The common law rule dealt with the possibility of the vesting of the future interest as determined from reading the will or other instrument involved. The Estates Act, however, deals with the actuality of events rather than the possibility thereof. We think that under the plain provisions of section 4 where a future interest created by a contract vests within the lives of the contracting parties, the future interest cannot be declared void as a perpetuity.

The future interest here created was a right in plaintiff to call for the conveyance of the land in question when plaintiff elected to exercise her option. It was a contingent interest. When, however, the election was made, the interest became vested. Since the interest in plaintiff vested within the lives of the contracting parties, and since under the Estates Act it is the actuality of the events that controls and not the possibility at the time the option contract was signed, that contract cannot be considered void as a perpetuity. Hence we conclude that the option agreement, identified in plaintiff's complaint as exhibit A, does not violate the rule against perpetuities.

Defendant contends that the Estates Act of 1947 should not be considered as intending to change the law as enunciated by the Supreme Court in Barton v. Thaw, supra. As we have already noted, frequent changes have been made in the rule against perpetuities by statute. It is defendant's contention, as set forth in his brief, that the legislative history shows that "the Estates Act of 1947 was designed to deal with the problems of decedents' estates and trusts and

that in dealing with the rule against perpetuities in Section 4 the Legislature was thinking in terms of future interest problems arising in deeds of trust and wills." We are unable to agree with defendant's contention in this respect. Furthermore, it is appropriate to observe that the pleadings here show that defendant's interest was acquired under a declaration of trust, as we have hereinabove noted.

The rule against perpetuities first took form in England as early as 1616 (see Barton v. Thaw, supra, at page 351), and thereafter developed as a process of evolution and that process has continued in Pennsylvania. The rule was applicable not only to decedents' estates and trusts, but to any instrument which concerned the creation of future interests affecting the alienation of real estate. The rule was brought to Pennsylvania from the common law of England and here the process of evolution has continued, the rule frequently being changed by statute, as we have noted herein.

It would have been unusual indeed for the legislature in the Estates Act of 1947 in dealing with perpetuities to have excluded future interests created by contracts or other instruments inter vivos from the operation of the statute. The act did not exclude, in our judgment, future interests created by contract, and we observe that in view of the history of this ancient rule, it is only reasonable and proper that such interests should have been included within the provisions of the act. Section 4 by its plain terms included future interests created in this manner.

The title of the act shows that it was clearly intended that all perpetuities should be affected by the provisions of the statute. The title reads as follows:

"An Act relating to the incidents of legal and equitable interests in real and personal property, including the validity thereof, the powers, rights, and duties

of persons with respect thereto, and the disposition of interests which fail, and containing provisions concerning termination of trusts, releases and disclaimers of power and interests, *perpetuities*, accumulations, charitable estates, rights of a surviving spouse in property as to which the decedent has retained certain powers, spendthrift trusts, limited estates in property, rules of interpretation, estates pur auter vie, estates in fee tail, and the Rule in Shelley's Case.''

It is clear that the provisions of the Estates Act relating to perpetuities have application to the contract that was entered into between these parties, and that defendant cannot prevail in his contention that this contract violated our present rule against perpetuities. Accordingly, therefore, we enter the following

*Order*

And now, February 17, 1958, defendant's preliminary objections in the nature of a demurrer are herewith overruled. Leave is granted to defendant to file an answer on the merits within 20 days.