# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allentown Patriots, Inc., a/k/a   :
Allentown Patriots of Allentown, PA   :
  :
        v.            :   No. 1464 C.D. 2016
  :   ARGUED: March 7, 2017
City of Allentown and Edward J.   :
Pawlowski, in his official capacity   :
as the Mayor of the City of Allentown,   :
        Appellants   :

Allentown Patriots, Inc., a/k/a   :
Allentown Patriots of Allentown, PA,   :
        Appellants   :
  :
        v.            :   No. 1511 C.D. 2016
  :
City of Allentown and Edward J.   :
Pawlowski, in his official capacity   :
as the Mayor of the City of Allentown   :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
             HONORABLE JOSEPH M. COSGROVE, Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
SENIOR JUDGE LEADBETTER            FILED: May 23, 2017

       The City of Allentown and Mayor Pawlowski (collectively, the City) appeal from an order of the Court of Common Pleas of Lehigh County (common pleas) denying the City's motion for post-trial relief and/or new trial in a matter originating with a December 2014 complaint for declaratory relief against the City filed by the Allentown Patriots, Inc., a/k/a Allentown Patriots of Allentown, PA, (the Patriots). The precipitating event for the litigation was Mayor Pawlowski's 2014 advising of the City's termination of a 1967 agreement. In that agreement,

the Patriots granted the City an option to purchase certain tracts of land in the Twelfth Ward (collectively, Patriots Park) that the nonprofit corporation was using for recreational purposes "only if and when" one of three events occurred: "(a) Seller shall cease to exist or dissolve, or (b) when Seller shall cease using the property solely for park or public recreation purposes, or (c) Seller shall convey or attempt to convey the property to a party other than Purchaser."[1] Advising the Patriots that the City was formally rejecting what he characterized as an "open offer option," the Mayor stated that the City was no longer interested in purchasing Patriots Park, that it was relinquishing all rights under the agreement, and that, effective immediately, it was ceasing performance thereunder.

In ruling on the ensuing litigation, common pleas concluded that the seven-page agreement was a valid and enforceable option contract, which the Mayor improperly terminated despite having termination authority, and that damages in the amount of $3948 were warranted due to the City's breach of the agreement when it stopped tendering the contemplated consideration. We reverse.

Recorded in the Lehigh County Recorder of Deeds Office, the agreement is, at least nominally, an option contract[2] for the sale of real estate. It

---

[1] December 11, 2014, Complaint for Declaratory Relief, Exhibit B at 5; Reproduced Record (R.R.) at 52a.

[2] As suggested by the City, because of the contingencies precedent to the City's ability to purchase the land, this contract is more akin to a right of first refusal, or preemptive right, than a traditional option. It has been noted that, "[a]n 'option' is a continuing offer to sell, irrevocable until the expiration of the time period fixed by agreement of the parties, which creates in the option holder the power to form a binding contract by accepting the offer." 17A Am. Jur. 2d, Contracts, § 52 at 82 (2016) (footnote omitted). On the other hand, "[a] right of preemption differs from an option in that a preemption does not give to the [prospective buyer] the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell, to offer the property first to the [prospective buyer] at the stipulated price[.]" *Id*., § 56 at 86. A preemptive right may be considered a form of option with contingent limitations on the **(Footnote continued on next page…)**

2

first provides that the Patriots are currently using the land for recreational purposes, that the City wants that land to continue to be used and made available for such purposes, and that the parties are in agreement with these principles. December 11, 2014, Complaint for Declaratory Relief, Exhibit B at 1; Reproduced Record (R.R.) at 48a. To that end, "[i]n consideration of the sum of One ($1.00) Dollar and other good and valuable consideration to it in hand paid by Purchaser [the City], the receipt whereof is hereby acknowledged, Seller [the Patriots] hereby agrees to grant an option to sell and convey to the Purchaser [the land and buildings described in the agreement]." *Id.* The agreement further provides that the City shall pay the Patriots one dollar per year for the option and that, upon exercise of the option, it "shall use the property only for park or public recreation purposes and shall not resell the property for any other use." *Id.* at 5; R.R. at 52a.

Regarding activation of the option, paragraph 4 provides that it shall be effective "only if and when" one of the aforementioned three conditions occurs. Paragraph 5 provides as follows:

> Upon the occurrence of any one of the events giving rise to this option, Purchaser may exercise its option within sixty (60) days after it shall first learn of the occurrence of such event. Upon any of the conditions under which this option is exercisable, the purchase price then payable by the City . . . to the Seller shall be the sum of One ($1.00) Dollar.

*Id.* at 5-6; R.R. at 52-53a.

---

(continued…)
prospective buyer's power to exercise the option. This distinction does not affect our primary analysis, however, and we will refer to the contract simply as an option, consistent with the usage of the parties and common pleas.

Regarding the parties' respective responsibilities during the option period, paragraph seven provides that the Patriots "shall be responsible for all applicable insurance coverage on the premises including, but not necessarily limited to, fire and theft and liability insurance." *Id*. at 6; R.R. at 53a. Paragraph nine provides that "[t]he City for the right granted to it by the Seller in this option, hereby agrees that it will maintain the grounds and softball fields, said maintenance to include the cutting of grass, the trimming of hedges, and general cleaning after major events held by the Seller." *Id*.

Paragraph ten refers to a City-owned parcel adjacent to the land subject to the agreement and being used by the Patriots for recreational purposes. Pursuant to that paragraph, the City agrees that the Patriots "shall have the right to use said premises, without charge by the [City] to the [Patriots], as long as the premises owned by the [Patriots] are used for the purposes herein stated, namely, recreational activities conducted by the [Patriots]." *Id*.

Further, the agreement provides that, if the option is exercised and the City effectuates the purchase, realty transfer taxes are to be divided equally and federal revenue stamps shall be the Patriots' responsibility. *Id*. Finally, it provides that the parties and their successors are bound by the agreement. *Id*. at 7; R.R. at 54a. Signatories included then Mayor Bracy and past Patriots President Philip Schantz.

The circumstances leading to the present litigation involved the maintenance aspects of the agreement, which evolved over time. As common pleas observed, although the City "initially performed grass cutting, tree trimming, and leaf pick-up services at Patriots Park[,]" the Patriots gradually assumed those duties. October 28, 2016, Common Pleas Opinion at 32. However, "[f]or the last

4

several years prior to the [Mayor's July 2014, termination], the City . . . collected trash and recycling items from the park and provided services such as hedge trimming, cutting bushes, and snow plowing in the parking lots." *Id*. In any event, the Patriots' attorney sent the City a letter on July 9, 2014, referencing the agreement and complaining that the City had recently stopped picking up trash barrels and requesting that it resume trash pickup. December 11, 2014, Complaint for Declaratory Relief, Exhibit C at 1; R.R. at 57a. In response, the City Manager sent the Patriots a July 14 letter notifying the entity that the City would no longer provide trash and recycling collection services and that, pursuant to City Ordinance 12703, nonprofits were required to recycle and to provide trash and recycling services at their own expense. *Id*., Exhibit D at 1; R.R. at 58a.

Subsequently, the Mayor in a July 30 letter, referencing the Patriots' July 9 letter, stated in pertinent part as follows:

> After much discussion and review of the Master Parks Plan, this is to inform you that the City is no longer interested in the purchase of the real property described in the Agreement. Therefore, the City formally rejects the open offer option under the terms of the Agreement and relinquishes all rights under the Agreement. In view of the foregoing, the City shall immediately cease performance under the Agreement.
>
> Given that the Agreement is recorded . . . and may be construed as a cloud on the title to the property, the City will reasonably cooperate with the . . . Patriots to execute the necessary documents to clear the title.
>
> The Patriots Organization is in excellent financial and organizational shape and I wish the best for your continued success in the future.

*Id*., Exhibit E at 1; R.R. at 59a.

In response, the Patriots filed the December 2014 complaint for declaratory relief seeking declarations that the termination was an invalid exercise

of the option and that the Mayor's termination, absent City Council's authorization, was *ultra vires*. In its answer and new matter, the City alleged for the first time that the agreement was null and void on its face because (1) the Patriots lacked a corporate existence;[3] (2) it violated the Rule Against Perpetuities;[4] (3) it was illusory; and (4) the governmental functions doctrine applied such that it could not be applied to current government officials.[5] Additionally, it alleged that

---

[3] Acknowledging a slight discrepancy between whether the designated appellee was "the Allentown Patriots, Inc." or "Allentown Patriots, Inc.," common pleas rejected the City's allegation regarding a lack of corporate existence. The court observed that the record indicated that "Allentown Patriots, Inc." was an existing corporate entity and that the City had entered into numerous contracts with it subsequent to the 1967 agreement. October 28, 2016, Common Pleas Opinion at 11. For example, there were agreements to improve Patriots Park whereby the Patriots would pay certain expenses and the City would provide labor. This issue is not presented in this appeal.

[4] The former common law rule is now governed by statute, providing that for interests created before January 1, 2007, "[n]o interest shall be void as a perpetuity" except an interest that has not vested "[u]pon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events . . . ." Sections 6104(a)-(c) of the Probate, Estates and Fiduciaries Code, 20 Pa. C.S. § 6104(a)-(c). Common Pleas rejected the City's argument, finding that Philip Schantz, the then-President of the Patriots and a signatory to the contract, was still living. However, under the statutory rule: "The period allowed by the [Rule] shall be measured from the expiration of any time during which one person while living has the unrestricted power to transfer to himself the entire legal and beneficial interest in the property." 20 Pa. C.S. § 6104(c). There is no suggestion that Mr. Schantz had any such power. At all events, although discussed at some length by the Patriots, that issue is not raised by the City in this appeal and we need not address it further.

[5] A governmental body in the performance of its governmental functions, as opposed to any proprietary functions, may not bind its successors. *Lobolito, Inc. v. N. Pocono Sch. Dist.*, 755 A.2d 1287, 1291 (Pa. 2000). In ascertaining whether a local government's specific action constitutes a governmental or proprietary function, a court will consider: "(1) whether the activity is one which the governmental unit is not statutorily required to perform; (2) whether [it] may also be carried on by private enterprise; and (3) whether [it] is used as a means of raising revenue." *Boyle v. Mun. Auth. of Westmoreland County.*, 796 A.2d 389, 393 (Pa. Cmwlth. 2002). The function is proprietary if the answer to any of these inquiries is yes. Again, this issue is not directly raised here, although it is tangentially related to the question of the reasonableness of the unlimited term of the agreement.

the Mayor had termination authority, that the Patriots' performance waived and relieved the City of its obligation to perform under the agreement, and that the City had no obligation to pick up trash barrels at Patriots Park thereunder.

In their amended complaint, the Patriots averred that the agreement was subject to the common law public trust doctrine[6] or the Donated and Dedicated Property Act,[7] therefore requiring the City to obtain orphans' court approval prior to termination. In its answer, the City alleged that neither the doctrine nor the act applied because the City had not dedicated or accepted Patriots Park for public use.[8,9] The parties' cross motions for summary judgment followed.

Following argument, common pleas denied the City's motion for summary judgment and granted in part and denied in part the Patriots' cross motion for summary judgment. The court determined that the Mayor had authority to terminate the agreement but that the City had breached its terms in doing so in the absence of any failure by the Patriots to perform thereunder. In that regard, the court concluded that the Patriots did not waive the City's obligations thereunder.

Following a bench trial and an evidentiary hearing concerning the Patriots' claim for monetary damages resulting from the City's alleged breach of the agreement, the court entered an order awarding the Patriots $3948 in damages.

---

[6] Pursuant to the common law public trust doctrine: "[W]hen land has been dedicated and accepted for public use, a political subdivision is estopped from interfering with or revoking the grant at least so long as the land continues to be used, in good faith, for the purpose for which it was originally dedicated." *In re Estate of Ryerss*, 987 A.2d 1231, 1237 n.8 (Pa. Cmwlth. 2009) (citation omitted).

[7] Act of December 15, 1959, P.L. 1772, *as amended*, 53 P.S. §§ 3381-3386.

[8] The City included Patriots Park in a list of city parks. Deposition of Christy Alvord, Manager of Recreation and Events Bureau for the City, 2006 Allentown Parks and Recreation Master Plan, Exhibit P-5 at 4-40 and 5-43; Patriots' Supplemental Reproduced Record at 699a and 702a. There is no dispute, however, that the title to Patriots Park never passed to the City.

[9] Again, neither of these issues is before us here.

The court concluded that, because the Patriots "performed certain aspects of property maintenance after the date the Mayor improperly terminated the Option Agreement, and because [the Patriots] continued to hold open the offer to sell the park pursuant to the [agreement] based on its position that the termination was improper, . . . [the Patriots were] entitled to damages sustained . . . for cutting the grass, trimming of hedges, and expenses related to 'general clean-up.'" October 28, 2016, Common Pleas Opinion at 32. Thereafter, the City filed a motion for post-trial relief and/or a new trial and the Patriots filed a motion for post-trial relief. In August 2016, the court entered an order denying both parties' motions. The City's appeal and the Patriots' cross appeal followed.[10]

There are three interrelated issues before us on appeal: 1) whether common pleas erred in determining that the agreement was valid and enforceable; 2) whether the court erred in concluding that the City, specifically, the Mayor, had authority to terminate the agreement; and 3) whether the court erred in determining that the Mayor's termination constituted a breach such that damages were warranted.[11] We turn to the first issue.

Common pleas determined that the agreement was valid and enforceable, concluding that it constituted an option contract supported by valuable consideration because the parties agreed that the Patriots would hold open an offer

_____

[10] Regarding the Patriots' cross appeal, we note that a prevailing party who disagrees with the legal reasoning of a court's determination of a legal issue lacks standing to appeal because the party is not adversely affected by the order. *Maple St. A.M.E. Zion Church v. City of Williamsport*, 7 A.3d 319, 322 (Pa. Cmwlth. 2010). Nonetheless, the argument raised by the Patriots in its cross appeal, the Mayor's authority to terminate the contract, is dealt with here because, if we agreed with the Patriots, it would require affirmance on a different ground than that relied upon by common pleas. Such an argument is always available to an appellee.

[11] Where, as here, questions of law are involved, our review is plenary. *Crandell v. Pennsbury Twp. Bd. of Supervisors*, 985 A.2d 288, 293 n.4 (Pa. Cmwlth. 2009).

8

to the City for the purchase of Patriots Park and, in exchange, the City agreed to tender consideration in the form of $1 and to provide maintenance of the grounds and softball fields. Observing that the option would not become available until the occurrence of one of three enumerated conditions, the court cited in support *Warner Brothers Theatres v. Proffitt*, 198 A. 56, 57-58 (Pa. 1938), holding that an option supported by consideration creates a stand-alone contract whereby the offeror contracts to keep the offer open and the offeree, in exchange for valuable consideration, receives the benefit to exercise the option. We reject common pleas' determination regarding the validity of the agreement.

Before addressing the nature and requirements of option contracts in the context of the agreement at issue, we note that, for the first time on appeal, the Patriots argue that this is not an option contract at all, but rather a mutual agreement to create a restrictive covenant which would run with the land in perpetuity. While the parties may have been motivated by a mutual desire to have the property remain as a park, the plain terms of the agreement set forth an option contract and do not establish a restrictive covenant. Under these terms, if the Patriots ceased maintaining the property as a park, ceased to exist, or decided to sell the property, the City *could* purchase the property in order to continue its operation as a park, but it was not obligated to do so. If the City elected not to exercise its option, nothing would have prevented the land from being used for other purposes. Accordingly, we reject the Patriots' belated characterization of the contract.

An option has been defined as follows: "[A] continuing offer to sell, *irrevocable until the expiration of the time period fixed by agreement of the parties*, which creates in the option holder the power to form a binding contract by

9

accepting the offer." 17A Am. Jur. 2d, Contracts, § 52 at 82 (2016) (emphasis added) (footnote omitted). "[A]n option contract generally binds the option giver, but not the option holder." *Id*. at 83 (footnote omitted). It also has been characterized as a contract to keep an offer open and as an unaccepted offer upon the conditions set forth in a written agreement. *Hanisco v. Twp. of Warminster*, 41 A.3d 116, 125 n.15 (Pa. Cmwlth. 2012). Further, it has been noted that, "[a]n option is a unilateral agreement binding upon the party who executes it from the date of its execution and becomes a contract *inter partes* when exercised according to its terms." *Id*. (citation omitted). Moreover:

> The primary element, that differentiates it from all other contracts, is that the Option Holder (optionee) has the legal power to consummate a second contract for the contemplated exchange or equivalents and at the same time the legal privilege of not exercising it. The Option Giver (optionor), on the other hand, has the correlative liability to become bound to execute that exchange, and at the same time a disability to avoid it. . . . The fact that the one is bound and the other is not does not invalidate the contract because the holder has paid a price for the option.

3 Corbin on Contracts, § 11.1 at 363 (rev. ed. 1996) (footnotes omitted). Finally, option contracts are governed by the customary rules of contract interpretation. 17A Am. Jur. 2d, Contracts, § 52 at 83. *See also Delaware River Pres. Co., Inc. v. Miskin*, 923 A.2d 1177, 1181 (Pa. Super. 2007) (holding that cases involving the right of first refusal are construed under "standard principles of contract construction").

Obviously, the City in the present case had no ultimate obligation to exercise the option, but at issue here was its maintenance obligation under the contract. While the City promised to perform certain maintenance services, this promise must be reasonably understood in the context of the entire agreement to be

10

further consideration[12] for the grant of the option, and the City had no more obligation to keep providing maintenance than to keep giving the Patriots $1 every year. Rather, by ceasing to provide consideration the optionee relieves the optionor of its duty to keep the option open, and loses its right to exercise the option. Even if the performance of maintenance were considered to be a duty imposed on the City by the contract, any such obligation would necessarily be limited by the duration of the option period.

In the present case, it is highly problematic that the agreement fails to provide a time period during which one of the conditions precedent would have to occur before the option would become actionable or expire. An option may not exist in perpetuity and a court may be called upon to restrict the life of an option to "within a reasonable time." *Wyeth Pharms., Inc. v. Borough of W. Chester*, 126 A.3d 1055, 1064 (Pa. Cmwlth. 2015); *Snyder v. Bowen*, 518 A.2d 558, 561 (Pa. Super. 1986). This is consistent with the customary rule of contract law providing: "Where there is no provision as to the time for performance or completion of a contract, courts will imply a reasonable time for such performance or completion." 17A Am. Jur. 2d, Contracts, § 458 at 445-46. Of course, "[w]hat constitutes a reasonable time depends on the particular circumstances of each individual case." *Snyder*, 518 A.2d at 561.

In determining whether this contract has continuing viability after the passage of fifty years, we also must consider the nature of the conditions precedent. In general, conditions precedent are highly disfavored and will be

---

[12] As noted above, the contract provided that the maintenance commitment was given by the City "for the right granted to it by the Seller in this option." December 11, 2014, Complaint for Declaratory Relief, Exhibit B at 6; R.R. at 53a.

strictly construed against the one seeking to avail himself of them. 17A Am. Jur. 2d, Contracts, § 452 at 440. The agreement at issue provides that the option was to become effective "only if and when" the Patriots ceased to exist or dissolved, ceased using the property solely for park or public recreation purposes, or conveyed or attempted to convey the property to a party other than the City. As the record reflects, it appears that there was only a remote possibility that even one of the conditions would occur and that the Patriots' intention was for them not to occur. With regard to the Patriots' ceasing to exist, its original governing document indicated that the entity "shall exist perpetually." January 6, 2015, Answer and New Matter, City's Exhibit 1 at 2; R.R. at 81a. Further, the 2004 amendment to the Patriots' articles of incorporation permits multiple distribution options upon dissolution such that the Patriots first offering Patriots Park to the City might be in contravention of those articles. *Id*. at 7; R.R. at 86a. Additionally, the testimony of Donald Hunsicker, whose history with the Patriots pre-dates the agreement,[13] indicates that the Patriots' intention was for the conditions precedent not to occur. In any event, as evidenced by the half century that has passed since the parties entered into the agreement, the possibility of even one of the conditions occurring seems to be remote.

Even more significant, all of the contingencies were in the sole control of the Patriots, rendering the City's rights under the agreement illusory, while allowing the Patriots to hold the City hostage to a perpetual service agreement. *See*

---

[13] Mr. Hunsicker testified that he is the son of former treasurer Earl Hunsicker. In addition, he indicated that he has served as athletic director since 1967 and has been a board member since the mid-1960s. In addition, he also has served as president and treasurer. October 29, 2015, Deposition of Donald E. Hunsicker, Notes of Testimony at 8-10, 12-13 (Exhibit 3 to Defendant's February 18, 2016, Motion for Summary Judgment).

*Wyeth*, 126 A.3d at 1064 (holding that Pennsylvania law disfavors perpetual contracts and requires that such terms be unequivocally expressed). Accordingly, upholding the continuing viability of the agreement at this point in time is not only unreasonable but against public policy, and we conclude that the City had the right to cease its participation and therefore was not in breach of any binding obligation.

Nonetheless, the Patriots contend that the Mayor lacked the authority to terminate the agreement on behalf of the City and so it must be construed to remain in effect in the absence of action by City Council. While City Council resolution is required for the award of contracts, neither the City's Home Rule Charter nor its Administrative Code addresses the termination of contracts. However, Section 130.16(A)(1) of the Administrative Code provides: "Contract administration for the City including but not limited to authority as to preparation of specifications, letting of bids, award of contracts and payment of bills, shall be vested in the Mayor and the Department of Finance. . . ." Section 130.16(A)(1) of the Code at 34; R.R. at 748a. For all the reasons set forth above, the City's continued participation in this contract, including providing services as consideration for the option, must be viewed as a voluntary waiver of its right to walk away. Seen in this light, the Mayor's decision to cease performing trash pick-up and grounds keeping services in exchange for an illusory option was well within his authority for contract administration.

Accordingly, for the foregoing reasons, we reverse.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allentown Patriots, Inc., a/k/a : 
Allentown Patriots of Allentown, PA :
:
v. : No. 1464 C.D. 2016
:
City of Allentown and Edward J. :
Pawlowski, in his official capacity :
as the Mayor of the City of Allentown, :
Appellants :

Allentown Patriots, Inc., a/k/a :
Allentown Patriots of Allentown, PA, :
Appellants :
:
v. : No. 1511 C.D. 2016
:
City of Allentown and Edward J. :
Pawlowski, in his official capacity :
as the Mayor of the City of Allentown :

# **O R D E R**

AND NOW, this 23rd day of May, 2017, the order of the Court of Common Pleas of Lehigh County is hereby REVERSED.

_____
**BONNIE BRIGANCE LEADBETTER,**
Senior Judge