# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Condemnation by County of : 
Lancaster of a Fee Simple Interest : 
for Construction of Lancaster County : 
Prison in Lancaster Township, Lancaster : No. 560 C.D. 2023
County, Pennsylvania, Over the Lands : 
of the Red Rose Lodge #16 Fraternal : Argued: September 9, 2025
Order of Police : 
 : 
Appeal of: Wanda F. Shelley a/k/a : 
Wanda Jean Nye : 

BEFORE:   HONORABLE PATRICIA McCULLOUGH, Judge
               HONORABLE LORI A. DUMAS, Judge
               HONORABLE MARY HANNAH LEAVITT, Senior Judge

## _OPINION NOT REPORTED_

**MEMORANDUM OPINION BY**
**JUDGE DUMAS**                          **FILED:  October 22, 2025**

Wanda F. Shelley, also known as Wanda Jean Nye (Nye), appeals from the order entered by the Court of Common Pleas of Lancaster County (trial court), which had dismissed one of her preliminary objections to the declaration of taking filed by Lancaster County (County).  Nye contends the court erred in construing the rule against perpetuities in interpreting an "option" agreement to purchase the property owned by the Over the Lands of the Red Rose Lodge #16 Fraternal Order of Police (FOP) prior to the County's condemnation.  We affirm.

## I. BACKGROUND[1]

Before stating the background, we briefly explain the condemnation process.  Under the Eminent Domain Code (Code), 26 Pa.C.S. §§ 101-1106, "a

---

[1] Generally, in an eminent domain case, we state the facts in the light most favorable to the prevailing party. *See Reading Area Water Auth. v. Schuylkill River Greenway Ass'n*, 100 A.3d 572, 576-77 (Pa. 2014) (*Reading*).

condemnor initiates a condemnation by filing a declaration of taking in the applicable" trial court. *See In re Condemnation by Pa. Tpk. Comm'n of Prop. Located in the Borough of W. Mifflin, Cnty. of Allegheny* (Pa. Cmwlth., No. 1167 C.D. 2021, filed Dec. 29, 2022) (*Mifflin*), slip op. at 3, 2022 WL 17983457, at *2, 2022 Pa. Commw. Unpub. LEXIS 573, *3 (citation modified).[2] "The condemnor must then serve the condemnee written notice of the declaration of taking." *Id.*, slip op. at 4, 2022 WL 17983457, at *2, 2022 Pa. Commw. Unpub. LEXIS 573, *3 (citation modified).

The Code defines a "condemnee" as the "owner of a property interest taken, injured or destroyed. . . ." 26 Pa.C.S. § 103 & cmt. ("It is intended by this definition to include tenants, purchasers under agreements of sale[,] and *holders of options* as condemnees." (emphasis added));[3] *accord In re Condemnation by Cnty. of Berks*, 914 A.2d 962, 965 (Pa. Cmwlth. 2007) (same); *see In re Powell*, 123 A.2d 650, 654 (Pa. 1956) (explaining that "where condemnation of land follows the granting of an option to purchase it and the optionee subsequently exercises the option according to the agreement, the optionee is entitled to the damages due to the taking unless the optionor has specifically reserved them to himself" (citation omitted)). "Upon receiving the condemnor's notice, the condemnee may file preliminary objections to the declaration of taking." *Mifflin*, slip op. at 4, 2022 WL 17983457, at *2, 2022 Pa. Commw. Unpub. LEXIS 573, *4 (citation modified). A putative condemnee may object on the basis that the condemnor acted in bad faith. *See Simco Stores v. Redevelopment Auth. of Phila.*, 302 A.2d 907, 913 (Pa. Cmwlth.

---

[2] We may cite to non-precedential cases for their persuasive authority. *See* Pa.R.A.P. 126.

[3] *See generally* Title 26 cmt. ("The comments provided throughout [the Code], including those preceding its [current] 2006 enactment were supplied by the Pennsylvania Joint State Government Commission, and may be used in determining the intent of the General Assembly."); 1 Pa.C.S. § 1939 (addressing comments).

1973) (*en banc*) (*per curiam*); *see also* 26 Pa.C.S. § 306(a).

Briefly, in 1968, Russell Shelley and Marian Shelley, then husband and wife, sold land to the FOP. The sales agreement also memorialized an oral option agreement as follows: "The below named trustees [of FOP] made an oral agreement with the seller, Russell Shelly [sic] that in the event at any time the F.O.P. Lodge No. 16 decides to sell the land described on the reverse side of this sales agreement, Russell Shelly [sic] is to have the first chance to buy it back at the same price he sold it to the F.O.P. Lodge. . . ." *See* Trial Ct. Op., 4/28/23, at 10. At some point, Russell Shelley married Nye, and Russell died in 1984.

Almost 40 years later, in 2022, FOP agreed to sell its property to the County because the County wished to build a prison. Nye sued FOP to enjoin the sale, reasoning that she had an option to buy back the FOP property. The County terminated the sales agreement, and Nye withdrew her suit.

The County instead filed a declaration of taking condemning FOP's property. Although the County disputed whether Nye was entitled to notice of the declaration, the County served Nye out of an abundance of caution. Nye, as a putative condemnee, filed three preliminary objections, including that the County acted in bad faith by condemning the property.[4] In support, Nye relied on the 1968 written agreement "to transfer the FOP property back to the Shelley family." Prelim. Objs., 11/14/22, ¶ 25. In Nye's view, FOP and the County "thwarted" the option by executing the 2022 sales agreement without permitting her to exercise the option. *Id.* ¶ 26. Nye thus reasons that the County acted in bad faith by terminating the agreement and filing the declaration of taking. The County filed a response in opposition, and Nye filed a reply.

---

[4] As discussed herein, Nye argues that because she holds an option, she is a "condemnee" under the Code that can file preliminary objections challenging the condemnation.

Before the court could rule on Nye's preliminary objections, FOP filed a "motion for declaratory relief" under the Declaratory Judgments Act, 42 Pa.C.S. § 7531-7541, arguing that the option agreement violated the rule against perpetuities. Mot. for Decl. Relief, 3/10/23, ¶ 4. FOP requested a declaratory judgment that the agreement was void. Nye filed an answer and new matter, and FOP filed a reply to the new matter.[5]

Meanwhile, the court held oral argument, at which Nye raised several arguments, including a contention that she was alive when the option was triggered. Notes of Testimony (N.T.), 4/20/23, at 24-25. Following argument, Nye filed a post-hearing brief arguing, *inter alia*, that because FOP did not decide to sell the property until after Russell died, Russell could not exercise the option. Post-Hearing Br., 4/20/23, at 6 (discussing 20 Pa.C.S. § 6104(c), which we address below). Accordingly, per Nye, she—not Russell—enjoys the option, which FOP triggered when it decided to sell in 2022. *Id.*

On April 28, 2023, the trial court dismissed Nye's "bad faith" preliminary objection and scheduled further hearings on Nye's remaining two preliminary objections. The trial court declined to strike FOP's motion for declaratory relief, reasoning that although FOP improperly filed it, the core issue was the validity of the 1968 option. *See* Trial Ct. Op. at 5 n.5 (reasoning that the 1968 writing was the "crux of Nye's bad faith preliminary objection").

_____

[5] Nye had requested that the court strike FOP's motion as an improper "disguised motion for judgment on the pleadings" and alternatively disputed the merits. Answer & New Matter to Mot. for Decl. Relief, 3/30/23, at 1-4. Under the Code, the filing of preliminary objections was intended to be a condemnee's "exclusive method" to challenge a condemnor's declaration of taking. *See* 26 Pa.C.S. § 306 & cmt. It apparently follows that the Code does not permit one condemnee to "cross-claim" another condemnee. In any event, Rule 1601 states that a "plaintiff seeking only declaratory relief shall commence an action by filing a complaint . . . ." Pa.R.Civ.P. 1601(a); *see* 26 Pa.C.S. § 102 cmt. (permitting the rules to supplement the Code). Even if FOP could cross-claim Nye under the Code, FOP's motion is self-evidently not a complaint.

On May 3, 2023, Nye and the County executed a settlement agreement, which provided, in relevant part, that Nye agreed to withdraw all of her preliminary objections. Cnty.'s Appl. to Dismiss, 7/26/23, at Ex. A (settlement agreement). In relevant part, their agreement recited that the parties wished to resolve the preliminary objections so the court could resolve Nye's compensation. The agreement also provided that nothing within the agreement "shall be interpreted to preclude [Nye] from seeking within the [instant eminent domain action] compensation for [her] alleged property interests in the" property. *Id.*

A few days later, Nye withdrew her remaining two preliminary objections, thus perfecting her appeal.[6] Praecipe to Withdraw, 5/9/23. Nye timely appealed. Notice of Appeal, 5/26/23; *see also* Pa.R.A.P. 311(e) ("An appeal may be taken as of right from an order overruling preliminary objections to a declaration of taking . . . .").

Nye did not file a court-ordered Pa.R.A.P. 1925(b) statement. In this Court, the County and FOP moved to dismiss Nye's appeal. In response, Nye averred that she had never received the trial court's order. We remanded for an evidentiary hearing.

The trial court held that an administrative breakdown had occurred and that Nye had not received the court's order. Trial Ct. Op., 11/9/23, at 6. In relevant

---

[6] *See In re Condemnation of Real Est. by Borough of Ashland*, 851 A.2d 992, 995 (Pa. Cmwlth. 2004) (opining that "common sense and judicial economy dictate that an appeal should not be filed to the dismissal of preliminary objections in an eminent domain case until the trial court has entered orders disposing of *all* preliminary objections that have been filed in that case" (emphasis in original) (citation modified)). Because Nye withdrew her pending preliminary objections, the trial court's April 28, 2023 order became an appealable order. *See id.*; *cf. Marcellus Shale Coal. v. Dep't of Env't Prot.*, 292 A.3d 921, 924 n.2 (Pa. 2023) (explaining that the parties' settlement of the remaining outstanding claims rendered final the court's prior dispositive order). We construe the trial court's April 28, 2023 order as dismissing FOP's motion for declaratory relief as moot.

part, the court held that Nye's "request to proceed *nunc pro tunc* should be granted." *Id.* Although the court granted relief, the record and docket do not reflect any Rule 1925(b) statement. This Court, however, denied the motion to dismiss without addressing the record absence of any filed Rule 1925(b) statement. Order, 11/30/23, at 2. In light of this Court's further administrative breakdown, for the sake of judicial economy, and because the parties briefed (and the trial court addressed) the sole issue before us, we decline to again remand for Nye to file her Rule 1925(b) statement. *Cf.* Pa.R.A.P. 105(a), 1925(c)(2).

## II. ISSUE

Nye contends the trial court incorrectly held that the 1968 option agreement violated the rule against perpetuities. Nye's Br., 3/6/24, at 4.[7]

## III. DISCUSSION[8]

### *A. The Rule Against Perpetuities*

To provide context for the parties' arguments, we state the rule against

---

[7] "The issue of whether the option agreement is an option is not an issue raised on appeal." Nye's Br. at 11 (citation modified). Technically, it appears that the 1968 agreement "is more akin to a right of first refusal, or preemptive right, than a traditional option." *Allentown Patriots, Inc. v. City of Allentown*, 162 A.3d 1187, 1190 n.2 (Pa. Cmwlth. 2017) (*Allentown*). "A right of preemption differs from an option in that a preemption does not give to the prospective buyer the power to compel an unwilling owner to sell, but merely requires the owner, when and if he decides to sell, to offer the property first to the prospective buyer at the stipulated price." *Id.* (citation modified). "A preemptive right may be considered a form of option with contingent limitations on the prospective buyer's power to exercise the option." *Id.* Notably, the rule against perpetuities issue was not appealed in *Allentown*. *Id.* at 1192 n.4.

[8] Our standard of review "in an eminent domain case is limited to a determination of whether the trial court abused its discretion or committed an error of law, and whether the findings of fact are supported by substantial evidence. Thus, we consider factual findings deferentially and resolve legal issues *de novo*." *Reading*, 100 A.3d at 576-77 (citation modified). Such legal issues include questions of statutory construction and the rule against perpetuities. *See Cent. Del. Cnty. Auth. v. Greyhound Corp.*, 588 A.2d 485, 488 (Pa. 1991) (*Greyhound*). Because the codified rule against perpetuities, 20 Pa.C.S. § 6104, "is substantially similar" to its uncodified statutory predecessor, *see* Act of April 24, 1947, P.L. 100, 20 P.S. § 301.4(a), we may rely on cases construing both. *See id.* at 489 n.8.

perpetuities: "no interest shall be void as a perpetuity except . . . upon the expiration of the period allowed by the common law rule against perpetuities as measured by actual rather than possible events." 20 Pa.C.S. § 6104(a)-(b) (citation modified). Stated otherwise, the "rule against perpetuities provides that an interest must vest, if it vests at all, within twenty-one years of a life in being," *i.e.*, within 21 years of death, at the latest. *Greyhound*, 588 A.2d at 487 n.1 (citation modified).[9]

### B. The Parties' Arguments

In Nye's view, under the rule, "the measuring life is one person, who during their lifetime had the unrestricted power to transfer the interest to themselves." Nye's Br. at 12 (paraphrasing 20 Pa.C.S. § 6104(c), which we discuss below). She reasons that because Russell never had any unrestricted power to transfer the property, he could not be the measuring life. *Id.* Thus, she contends, the applicable time period "did not begin to run when [Russell] died in 1984." *Id.* Rather, Nye argues that her life is the appropriate measuring life under the rule. *Id.*

In response, the County and FOP argue that Nye waived her argument because she never raised it before the trial court. Cnty.'s Br. at 11-12 (opining that Nye's closest reference was that anyone "alive at the time of the triggering event," *i.e.*, FOP's decision to sell, "becomes the measuring life"); FOP's Br. at 14 n.4 (same).[10]

---

[9] The common law rule "provided that a future interest was void *ab initio* if there was the *possibility* that it would not vest within twenty-one years of a life in being[.]" *Greyhound*, 588 A.2d at 489 n.8 (emphasis added). The statutory rule eliminated "possibility" by examining whether the future interest actually vested, which is known as the "wait-and-see" approach. *Id.*; *see generally* Philip A. Brégy, *Intestate, Wills and Estates Acts of 1947* 5258-59 (1949) (*Acts of 1947*). The primary drafter of the statutory predecessor to Section 6104 was Brégy, who wrote an exhaustive treatise. W. Barton Leach, *Perpetuities Legislation: Hail, Pennsylvania!*, 108 U. Pa. L. Rev. 1124, 1145 & nn.9-10 & 53 (1960). Leach wrote the well-known *Perpetuities in a Nutshell*, 51 Harv. L. Rev. 638 (1938) (*Nutshell*).

[10] The County also argues that Nye's appeal is moot because she agreed to withdraw all

7

On the merits, the County and FOP dispute that Nye's life is the measuring life. Cnty.'s Br. at 21; *see generally* FOP's Br. at 8-19 (reiterating the County's arguments). In their view, the "measuring life must be ascertained when the interest is created," which is the agreement between Russell and the FOP. Cnty.'s Br. at 21. Because the FOP is not a "life in being," they reason, Russell is the only "life in being." *Id.* Because Russell died in 1984, they conclude the option did not vest within 21 years after his death. *Id.*

They also reject Nye's reasoning that Russell never had unrestricted power to transfer the FOP property under Section 6104(c). *Id.* at 22. They begin with the premise that the rule against perpetuities applies only to legal or equitable interests in property, not the property itself. *Id.* Building on that premise, they assert that because Russell had an option (right) to repurchase the property, the option—not the underlying property—is the interest referenced in Section 6104(c). *Id.* at 22-23. Although Russell "may not have had the power to transfer the *real estate* to himself, there was no restriction on his ability to transfer to himself the legal and beneficial interest in the *option*." *Id.* at 23 (emphases in original). They argue that unlike Russell, Nye could never be the measuring life in being because she was not (1) married to Russell when he created the interest, and (2) a party to the option agreement. *Id.* at 10, 14-15, 21 n.6; FOP's Br. at 16-17.

*C. Section 6104(c) and "Option" Agreements Involving Land*

Section 6104(c) provides that the "period allowed by the common law rule against perpetuities . . . shall be measured from the expiration of any time during which one person while living has the unrestricted power to transfer to himself the

---

(not just two) of her preliminary objections. Cnty.'s Br. at 13 (referencing the settlement agreement). We reject that argument because the parties agreed that Nye could continue to seek compensation for the taking. *See* Cnty.'s Appl. to Dismiss, at Ex. A (settlement agreement).

entire legal and beneficial interest in the property." 20 Pa.C.S. § 6104(c). For example, the perpetuities period would begin with "the death of a donee of a power who could appoint by deed or by will," the insured's death for an unfunded life insurance trust, or "the settlor's death" for a revocable trust.[11] *Id.* cmt.

In sum, Section 6104(c) identifies when the perpetuities period is delayed. When a person retains complete power to control the property, *e.g.*, a power to unilaterally revoke a trust, then the perpetuities period cannot start. *See id.* When a person loses that power—typically at death when that person can no longer exercise such control—then the perpetuities period starts. *See id.*

Section 6104(c), however, does not directly address the question of identifying the relevant life in being. But, per Section 6104's drafter, the "best treatment" of the question of "who can be considered a life in being" was addressed in Restatement (First) of Property § 374 cmts. j to *l* (Am. L. Inst. 1944). *See Acts of 1947*, at 5269; *see also Greyhound*, 588 A.2d at 489 (approving of the Restatement (First) of Property in a different context). The Restatement (First) of Property § 374 states the "life in being is the survivor of persons named or described by the conveyor in connection with the gift in question." *Acts of 1947*, at 5269 (summarizing the Restatement (First) of Property § 374). However, "if no persons are expressly designated as the measuring lives, the period will be measured by the survivor of

---

[11] With respect to the latter, in a revocable trust, the settlor has unrestricted power to revoke the trust. *See* 20 Pa.C.S. § 6104(c) cmt. Thus, the perpetuities period could not start until the expiration of the settlor's unrestricted power to reclaim the property, *i.e.*, expiration occurs on the settlor's death. *See id.* Section 6104(c) thus delays the start of the perpetuities period when a settlor (or grantor) retains an unrestricted power to reacquire complete ownership of the property. *See* 20 Pa.C.S. § 6104(c); *Nutshell*, 51 Harv. L. Rev. at 662-63 (stating the "existence of the power of revocation should cause the period of perpetuities to be computed only from the expiration of the power—*i.e.*, from the death of A [(the settlor)]—and it has been so held"); *see also Acts of 1947*, at 5501-02, 5607 (explaining, in construing the nearly identical Section 6106(c), that "the perpetuity period in a revocable *inter vivos* trust will begin only at the death of the settlor").

persons living at the time of the conveyance and having a reasonable relation to the gift." *Id.* If the conveyor failed to identify a life in being, then "little difficulty is encountered in determining which lives have a reasonable relation to the gift . . . ." *Id.* A grantor—like a conveyor—can convey land. *See id.*

In the context of Section 6104(c), a grantor with an "option" to buy the property from the grantee lacks unrestricted power to control, transfer, or otherwise reclaim the property from the grantee. *See Greyhound*, 588 A.2d at 488 n.4; *Allentown*, 162 A.3d at 1190 n.2. The reason such a grantor lacks unrestricted power is that the grantor's power to buy depends on the grantee's decision to sell. *See Greyhound*, 588 A.2d at 488 n.4; *Allentown*, 162 A.3d at 1190 n.2. In other words, if the grantee never decided to sell the property, then the grantor could never exercise his "option" to buy the property. The grantor's right is akin to a contingent, future interest—the grantor lacks any present right to exercise the "option" to buy. *Cf.* 20 Pa.C.S. § 6104(c) cmt. (providing that a living settlor of a revocable trust has unrestricted power to claim the property).

In sum, because the grantor of an option, while living, has no unrestricted power to reclaim the property, Section 6104(c) does not delay the start of the perpetuities period. *See Acts of 1947*, at 5307 (emphasizing that under Section 6104, "an unlimited option should be allowed to run until the expiration of the permissible period, and stricken down only if it remains unexercised at that time." (footnotes omitted)) & n.9. "Properly stated[,] the rule should be that an option which remains outstanding after the permissible period is void as a perpetuity unless there is no potential fettering of property or unless such fettering is outweighed by other considerations of policy." *Id.* at 5308.[12]

---

[12] Under the common law rule, courts voided the option if there was a possibility the option could not vest within 21 years. Nye did not invoke public policy on appeal.

Courts have long construed the rule against perpetuities in considering options to buy land. *See Barton v. Thaw*, 92 A. 312 (Pa. 1914) (construing the common law rule and adopting the lower court's opinion). In *Barton*, the grantors conveyed mining rights to the grantees, which gave the grantees an option to purchase the land from the grantors. *Id.* at 313. The grantees never exercised their option within the grantors' lifetimes. *Id.* The issue was "whether an option or right to purchase land, unlimited in point of time, violates the rule against perpetuities, and therefore is void and inoperative as against the land." *Id.*

Our Supreme Court held that the option to purchase land, unlimited in time, was void under the rule. *Id.* at 317. It was void because the interest, *i.e.*, the option to purchase land, was contingent on the grantees' exercise of the option. *Id.* An unlimited-in-time contingent interest, our Supreme Court noted, may be exercised "in 100 years, or in 1,000 years, or . . . never . . . exercised at all." *Id.* Such a contingent interest is not a present power, let alone an unrestricted power, to enjoy the property. *Id.*; *see also Acts of 1947*, at 5501 (reflecting drafter's explanation that Section 6104(c) restates the common law rule). In other words, under the common law rule, the option was void because it could *possibly* vest after 21 years. Critically, because the grantors failed to specify a life in being, the Court noted the default period was 21 years after a life in being. *Barton*, 92 A. at 314 (stating the common "law allows the vesting of an estate or interest, or the power of alienation, to be postponed, for the period of lives in being, and 21 years and 9 months thereafter" (citation modified)); *see also Nutshell*, at 660 ("It has been held both in England and the United States that an option in gross to purchase land is void if it can be exercised beyond the period of perpetuities." (citation modified)).

After the rule was codified, courts continued to use "the lives of the

11

*contracting* parties as proper measuring lives" in applying 20 Pa.C.S. § 6104. *See* Frank L. Jones, *Measuring Lives Under the Pennsylvania Statutory Rule Against Perpetuities*, 109 U. Pa. L. Rev. 54, 58-63 (1960) (*Measuring Lives*) (emphasis added) (discussing *Mumma v. Hinkle*, 20 Pa. D. & C.2d 621, 71 Dauph. Co. Rep. 241 (C.C.P. Dauphin 1960)). In *Mumma*, two private parties executed an unlimited-in-time option agreement for the purchase of land. *Mumma*, 20 Pa. D. & C.2d at 622. One party attempted to exercise the option within 21 years, and the other party disputed the validity of the option under 20 Pa.C.S. § 6104. *Id.* at 622-23. The court compelled performance of the option, reasoning that "where a future interest created by a contract vests within the lives of the contracting parties, the future interest cannot be declared void as a perpetuity." *Id.* at 626.[13]

Subsequently, our Supreme Court again addressed the rule in *Greyhound*, which involved a corporation as conveyor and a municipal agency as conveyee, *i.e.*, no measurable lives in being. *Greyhound*, 588 A.2d at 486. In *Greyhound*, the conveyor conveyed land subject to an option to repurchase the land by the conveyor. *Id.* at 487. "An option to purchase is a future interest which may or may not be exercised, *i.e.*, it may or may not vest, within twenty-one years. It is, therefore, subject to the rule against perpetuities." *Id.* at 488 n.4. The conveyee sued to void the option "as violative of the rule against perpetuities." *Id.* at 487. On appeal, our Supreme Court agreed, reasoning that because the conveyor did not exercise its option within 21 years of its creation, it was void. *Id.* at 491. *Greyhound*

---

[13] *Accord* Leon A. Mankowski, Note, *Future Interests-Rule Against Perpetuities-Application of the "Wait and See" Rule to Options*, 4 Vill. L. Rev. 144, 145 (1958) (explaining that under *Mumma*, "all options not otherwise limited in time will be valid during the lives of the *parties* and for twenty-one years thereafter" (emphasis added)). "Two corollaries follow. First, the outcome would be the same if only one contracting party were alive at the time of vesting. . . . Second, the option would remain exercisable until at least twenty-one years after the death of the survivor of both contracting parties." *See Measuring Lives*, at 59 (citation modified).

explained that an "unlimited in time" option to buy a specific property is void because it, *inter alia*, "isolates" and removes the property from commerce. *Id.* at 490-91 (citation omitted).[14]

More recently, the Superior Court addressed a similar situation, except involving a life in being. *Est. of Royer v. Wineland Equip., Inc.*, 663 A.2d 780, 781 (Pa. Super. 1995).[15] In *Royer*, a property owner (who died in 1994) had executed an agreement giving the defendant business a right of first refusal to buy the property. *Id. Royer* explained that the interest would not expire until 21 years "after the death of the last life in being at the time the interest was created," which was 2014 (21 years after the owner died). *Id.* at 782. Thus, the right of first refusal expired after that date. *Id.*

### D. The Rule Voids the 1968 "Option"

Initially, we disagree with the County and FOP that Nye waived her argument that she is the measuring life in being. In her post-hearing brief, Nye argued that she was alive when FOP triggered her option. *See* Post-Hearing Br., at 6. We reasonably infer that Nye was essentially arguing that she was the measuring life in being.

We also respectfully reject Nye's Section 6104(c) argument. No Pennsylvania court has construed the rule in such a fashion. Initially, per our Supreme Court, the "option" itself is the interest at issue, not the underlying property. *See Greyhound*, 588 A.2d at 488 n.4 ("An option to purchase is a future interest which may or may not be exercised, *i.e.*, it may or may not vest, within twenty-one

---

[14] In reaching its holding, the *Greyhound* Court distinguished precedent holding that a general contract that did not burden specific property was not subject to the rule against perpetuities. *See Greyhound*, 588 A.2d at 489-90 (distinguishing *Se. Pa. Transp. Auth. v. Phila. Transp. Co.*, 233 A.2d 15, 20 (Pa. 1967)).

[15] We may conditionally cite Superior Court cases. *In re Gun Range, LLC*, 311 A.3d 1242, 1248 n.8 (Pa. Cmwlth. 2024), *cert. denied*, 145 S. Ct. 1174 (2025).

13

years. It is, therefore, subject to the rule against perpetuities."); *see also Allentown*, 162 A.3d at 1190 n.2 ("A preemptive right may be considered a form of option with contingent limitations on the prospective buyer's power to exercise the option.").

By extension, Russell never had any unrestricted power to transfer FOP's property, because Russell's power was contingent on FOP's decision to sell. *See Allentown*, 162 A.3d at 1190 n.2. Because Russell's power was not unlimited, Section 6104(c) does not control when the perpetuities period commences. *See* 20 Pa.C.S. § 6104(c). Russell had a contingent, future interest—not an actual, vested interest. *See id.* § 6104(b).[16]

Courts, commentators, and the statute's drafter concur. *See Barton*, 92 A. at 317 (holding, under the common law, that a contingent interest was subject to the perpetuities period). Akin to *Royer*, which also involved a life in being and a corporate entity, Russell's option expired in 2005, 21 years after his 1984 death. *See Royer*, 663 A.2d at 781; *see also Greyhound*, 588 A.2d at 490 (holding that an option expired in 21 years when the contracting parties had no measurable lives in being); *Mumma*, 20 Pa. D. & C.2d at 626 (validating option exercised while the contracting parties were alive); *Measuring Lives*, at 59 (stating the option survives until 21 years after the survivor of both contracting parties). In sum, Section 6104(c) does not delay the start of the perpetuities period.

For all these reasons, we reject Nye's argument that she is the measuring life. To accept her argument requires accepting her premise that FOP's decision to sell started the perpetuities period. It did not. Nye's premise contradicts

---

[16] Accordingly, we respectfully disagree with the County's contention that Russell had "unrestricted" power to transfer the option to himself under Section 6104(c). *See* Cnty's Br. at 22-23. Unlike a settlor with unrestricted power to revoke a trust, Russell's power was sharply restricted. *Cf.* 20 Pa.C.S. § 6104(c) cmt. Russell had no unilateral, immediate, unrestricted power to reclaim the property—his right was triggered only when FOP decided to sell. *Cf. id.*

14

well-settled law. *See, e.g.*, *Barton*, 92 A. at 317. FOP's decision to sell triggered an examination as to whether Russell's option vested within the perpetuities period but did not start the period itself. *See* 20 Pa.C.S. § 6104(b)-(c); *Greyhound*, 588 A.2d at 489-90 (explaining that measuring lives in being must be determined when the interest is created and not when the interest is triggered); *Acts of 1947*, at 5269. Because Russell was the only measurable life in being, *i.e.*, he was one of the contracting parties when the interest was created, Nye cannot be a measuring life. *See, e.g.*, *Greyhound*, 588 A.2d at 490-91. In sum, the option was valid but contingent until 2005, when it expired 21 years after Russell's 1984 death.

Accordingly, the trial court did not err by dismissing Nye's preliminary objection opposing the County's condemnation. *See Reading*, 100 A.3d at 576-77. Because Nye does not have a property interest, she is not a "condemnee" that can file preliminary objections to the County's declaration of taking. *See* 26 Pa.C.S. § 103 & cmt.

## IV. CONCLUSION

For all these reasons, we affirm. We commend the trial court's thorough, scholarly opinion. *See In re: Condemnation by Cnty. of Lancaster of a Fee Simple Int. for Constr. of Lancaster Cnty. Prison in Lancaster Twp., Lancaster Cnty., Pa., Over the Lands of the Red Rose Lodge #16 Fraternal Ord. of Police* (C.C.P. Lancaster, No. 22-06031, filed Apr. 28, 2023).

_____
**LORI A. DUMAS, Judge**

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Condemnation by County of Lancaster of a Fee Simple Interest for Construction of Lancaster County Prison in Lancaster Township, Lancaster County, Pennsylvania, Over the Lands of the Red Rose Lodge #16 Fraternal Order of Police

Appeal of: Wanda F. Shelley a/k/a Wanda Jean Nye

: : : : : : : : : : : : :

No. 560 C.D. 2023

# **O R D E R**

AND NOW, this 22nd day of October, 2025, we AFFIRM the April 28, 2023 order entered by the Court of Common Pleas of Lancaster County.

_____
**LORI A. DUMAS, Judge**